JOHN D. SMOOT, Respondent, v. BANKERS LIFE ASSOCIATION, Appellant.

St. Louis Court of Appeals.    Argued and Submitted April 13, 1909. Opinion Filed June 8, 1909.

1. INSURANCE: Assessment Companies: Construction of Certificate.   Where a certificate of insurance has an indorsement on its back to the effect that benefits are to be provided for by assessments on the certificate holders, such indorsement must be construed along with the face of the certificate.

2. ———: ———.   Where an insurance company in the usual conduct of its business provides for the payment of benefits due from it by levying an assessment upon persons holding certificates of insurance, such company is doing the business of insurance upon assessment plan according to section 7910, Revised Statutes 1899.

3. ———: ———: Non-forfeiture Laws.   Insurance companies engaged in the life insurance business on the assessment plan are not subject to the non-forfeiture provisions of our insurance laws as contained in section 7897, Revised Statutes 1899.

4. CORPORATIONS: Foreign Corporations: Conflict of Laws. Where a foreign corporation undertakes to do business in this State it must conform to the laws of this State and cannot avail itself of the benefits of our law without bearing its burdens.

5. ———: ———: Charter: Notice: Duty of Persons Dealing With a Corporation.   When a corporation organized by one State is authorized by the laws of another State to do business in the latter, it carries with it its charter and the law under which it is incorporated, and persons dealing with it are bound to take notice of the provisions for the control of its affairs contained in such charter and laws.

Smoot v. Bankers Life Assn.

6. ———: **By-laws: Members.** Members of a corporation are bound to take notice of its by-laws and are bound thereby.

7. ———: **Insurance Companies: Assessment Plan: "Ultra Vires."** When a corporation has been organized for the purpose of carrying on life insurance business on the assessment plan it is *"ultra vires"* the corporation to transact business on any other plan.

8. **INSURANCE COMPANIES: Foreign Corporations: Authority to do Business in This State: Assessment Plan.** When a foreign corporation has been authorized by the Superintendent of the Insurance Department to carry on a life insurance business in this State on the assessment plan it has no lawful authority to make life insurance contracts on any other plan.

9. ———: **Assessment Companies: Certificate Holder: Estoppel.** Where the holder of a certificate of insurance in an assessment insurance company has paid assessments upon notice from the company, varying in amount from a few cents to six or seven dollars, for a long period, he cannot be heard to say that he did not know the company was doing insurance business on the assessment plan.

10. ———: ———: ———: **Forfeiture: Damages.** Where the holder of a certificate of insurance has forfeited his policy by non-payment of assessments he cannot maintain an action against the company for damages for the forfeiture of his policy.

11. ———: ———: ———: ———: **Estoppel.** The fact that an assessment insurance company has permitted members who have forfeited their membership through non-payments of assessments to be reinstated upon presentation of a health certificate, does not preclude it from refusing reinstatement to any particular member who has forfeitured his membership through non-payment.

12. **TRIAL PRACTICE: Objections to Evidence: Withholding Ruling by the Court.** Where evidence was objected to and the court permitted it to be given stating that he would rule on its admissibility when he determined the case, such action by the court is reversible error if excepted to at the time.

13. **INSURANCE: Policy: Present Worth: Evidence.** Where the face value of an assessment plan insurance policy is $2,042 and the present worth of such policy when calculated on the basis of the assessment plan is $864.80 and when calculated on the basis of old line insurance is $453.52 a judgment for $1,620 damages for forfeiture of the policy, was not supported by the evidence.

14. ————: ————: **Assessment Companies: Present Worth.** An assessment insurance policy, on which no level premiums are paid and which matures only at the death of the insured, where the company has no reserve fund applicable to the payment of losses, has no surrender value during the lifetime of the insured.

Appeal from Scotland Circuit Court.—*Hon. Chas. J. Stewart,* Judge.

REVERSED.

*I. M. Earle* and *J. M. Jayne* for appellant.

Defendant is an assessment life insurance company under the Missouri statute, because it appears from the contract as practically construed by the parties that it has no level and fixed premiums. McCoy v. Bankers Life Assn., 134 Mo. App. 35; Westerman v. Supreme Lodge, 196 Mo. 670; Williams v. St. Louis Life, 97 Mo. App. 454; Hayden v. Mut. Reserve, 98 Fed. 200; Armstrong v. Brotherhood, 112 S. W. 24, 3 Mo. Annotated Statutes, 1906, sec. 7901, and cases cited. Being an assessment insurance company defendant is expressly exempted from the provisions of the non-forfeiture law. R. S. 1899, Annotated, sec. 7910; Statutes 1906, vol. 3; McCoy v. Bankers Life Assn., 134 Mo. App. 35. The failure of a member in an assessment association to pay his assessment in the time provided, terminates his membership, if so provided in the contract. McCoy v. Bankers Life Assn., 134 Mo. App. 35; Lavin v. Grand Lodge, 104 Mo. App. 17, 78 S. W. 329; Smith v. Sovereign Camp, 179 Mo. 119, 77 S. W. 862; Lehman v. Clark, 174 Ill. 279, 51 N. E. 222; Kennedy v. Grand Fraternity (Mont.), 92 Pac. 971, 25 Cyc. 831. Measure of damages even under an old line contract (aside from the non-forfeiture statute) in case of wrongful termination of the contract is the difference between the present worth of the indemnity for the plaintiff's expectancy of life, and the present worth of his premiums for the same

period, with interest on such difference from such wrongful termination. (Kelley v. Security Mut. Life, 94 N. Y. S. 601; Mut. Reserve v. Ferrenback, 144 Fed. 342), or the amount of premiums paid. Suess v. Insurance Co., 64 Mo. App. 1; VanWerden v. Eq. Life, 99 Iowa 621; Key v. Natl. Life, 107 Iowa 446, 78 N. W. 68; McCall v. Insurance Co., 124 N. C. 9, 32 S. E. 323; Dickey v. Conn. Mut. Life, 82 Mo. App. 372. The by-laws of a society are binding upon all of the members and all are conclusively presumed to know them. 1 Bacon, Benefit Societies (3 Ed.), sec. 81; Coleman v. Knights of Honor, 18 Mo. App. 189; Harvey v. Grand Lodge, 50 Mo. App. 472. Members of mutual benefit associations are charged with notice of and will be bound by the provisions of the constitution and by-laws of the association. 1 Cooley's Briefs on Insurance Law, p. 697.

*Smoot & Smoot* and *N. M. Pettingill* for respondent.

The policy in suit is an old line policy and not assessment. R. S. 1899, sec. 7901; McDonald v. Bankers Life Assn., 154 Mo. 618. The policy in suit is a facsimile policy of the one in above cause. McDonald v. Bankers Life Assn., 154 Mo. 623. The character of the company is not determined by the law under which it was organized or the license but the policy. Alo v. Insurance Co., 164 Mo. 686. The character of the insurance is determined by the contract. Looney v. Supreme Lodge, K. P., 147 Mo. 139. By-laws figure not in this contract for they are in no way made a part of the same nor even referred to nor are the articles of incorporation under the laws of Iowa. See McDonald v. Life Assn., 154 Mo. 628; Elliot v. Insurance Co., 76 Mo. App. 566. By-laws cannot affect or change the contract unless made a part of the same. Goodson v. Masonic Association, 91 Mo. App. 339. This contract is altogether different from one in the case of McCoy v. Bankers Life, 134 Mo. App. 35.

Even if the defendant was an assessment company it had no right to forfeit the respondent's certificate under the circumstances shown in this cause for the reason that the law abhors forfeitures and they can be easily waived by a course of conduct. Hanley v. Life Association, 4 Mo. App. 253; Thompson v. St. Louis Mutual Life, 52 Mo. 469.

STATEMENT.—The plaintiff in this case commenced his action in the circuit court of Scotland county, alleging in his petition that the defendant, a corporation organized and existing under the laws of Iowa and engaged in this State in carrying on the business of life insurance, had, on the 6th of December, 1890, in consideration of the sum of $63, in hand paid by plaintiff, then forty-two years old, executed and delivered to him a certificate of membership and policy of insurance on his life whereby it promised for that consideration and for certain sums to be paid thereafter in quarterly payments, to pay the wife of plaintiff a sum of money equal to two per cent of the aggregate amount of the guarantee fund as might appear from the books of the defendant company on the first day of the month on which the death of plaintiff might occur, not exceeding $2,000, and also the return of the guarantee deposit which was $42; that the policy contained the further provision that on the death of the beneficiary prior to that of the member in case none is named, the benefit should then be paid to the legal representatives of the deceased member. The death of the wife of plaintiff is averred and it is averred that on the issue and delivery of the policy plaintiff paid the company the $63, and continued to pay the quarterly premiums until the first of May, 1907, amounting to the sum of $310, and that on the first of May, 1907, or soon thereafter, the defendant wrongfully and without authority of law repudiated and cancelled the contract and policy of insur-

ance, and that at the time of the cancellation of the contract the two per cent of the guarantee fund of the company as shown by the books of the defendant was sufficient to pay the sum of $2,000 and the guarantee deposit of $42 upon the policy, and it is averred that plaintiff has fully complied with and performed all the conditions of the policy; that by reason of age and health he has been unable to procure reinsurance upon his life; that the action of the defendant in cancelling was wrongful, unlawful and in violation of the contract of insurance made with him and that by reason thereof he is damaged in the sum of $2,000.

In its answer the defendant denies that it is conducting the business of life insurance generally, but avers that it is carrying it on upon the assessment plan only, and that as an assessment association it issued to the plaintiff its certificate of membership at the date stated in the petition; denies that plaintiff at any time paid quarterly premiums; denies that it charged fixed or level premiums, but admits that plaintiff paid all quarterly assessments payable upon his certificate of membership, "except the assessment levied and payable for the month of April, 1907;" denied that it cancelled the membership certificate without authority; admits that two per cent of the guarantee fund of the association is more than sufficient to pay the $2,042; denies that plaintiff fully complied or performed the contract and conditions of membership; denies that he made the payment due April, 1907, and which was levied during that month as provided in the certificates of membership, and denies that its cancellation of the certificate was unlawful. Further answering, it sets up that it is incorporated as an assessment life insurance association under the laws of Iowa; that the laws of Iowa define and fix assessment associations as those which provide "for the payment of policy claims, accumulation of a reserve or emergency fund, the expenses of management and prosecution of the business, by pay-

ment of assessments or periodical calls, as provided in the contracts, and wherein the liability of the insured to contribute to the payment of policy claims is not limited to a fixed amount." The answer then sets out and pleads certain sections of the Code of Iowa, governing companies doing insurance on the assessment plan, and the articles of association and by-laws of. defendant, the former showing organization and incorporation under the laws quoted avers that the articles and by-laws have been filed with and approved by the proper officers of the State of Missouri, and that it is licensed by the Insurance Department of the State of Missouri to do insurance business in this State on the assessment plan; avers that it had never charged or collected any fixed or level premiums, but that it has always provided for payment of death losses by levying assessments for each quarter—such assessments being a percentage upon a guaranty deposit made by each member, and the amount assessed to each member has always been levied and ascertained by multiplying the guaranty deposit by the rate of percentage so levied, and all death losses have been provided for by such quarterly assessment and in no other manner, and that the plaintiff has paid, without objection, to the defendant association sixty-two quarterly assessments (varying in amounts from $2.52 to $6.30) and extending over the entire period of his membership up to and including Call No. 95, paid in January, 1907. It is averred that on the 25th of March, 1907, at a regular meeting of the board of directors of the defendant, at which all the members were present, an assessment of ten per. cent was levied upon the membership of the association, based pro rata upon the guaranty fund, for the purpose of providing funds for the payment of death losses, assessments to be due and payable during the month of April, 1907, to be designated as Call No. 96, and that in pursuance of this assessment, a notice, dated 25th of March, was addressed to plaintiff of this levy.

The assessment notice or levy was given in evidence and is as follows:

"This Notice Should Be Sent With The Payment.

"Be Particular To Give Notice Of Change of Address.

"28th Year—Call No. 96.

THE BANKERS LIFE ASSOCIATION.

"42-18554            Des Moines, Iowa, March 25, 1907.

"John D. Smoot,

"Memphis, Mo.

"Sir:—This is to notify you that a levy of ten per cent upon the Guarantee Fund has been made to provide Benefit Fund for death losses, no part of which can be used for expenses.

"Your proportion for the benefit fund is........$ 4.20

"The interest accrued upon your Guarantee Note
    to April 1, 1907, for the reserve fund is....

"And one installment on the principal of your
    Note for the Guarantee Fund...........

        "Total ................. .............$ 4.20

"When more than one certificate is included herein an equal proportion of the above total is payable on each.

"This sum must be paid to the treasurer of this association at this office, or to a depository bank, during the month of April, 1907, and if not so paid, the Certificate or Certificates of Membership and all payments thereon will become forfeited and void.

            "Respectfully,

        "THE BANKERS LIFE ASSOCIATION,

            "By H. S. NOLLEN, Secretary."

Appended to the notice is this:

"Don't Pigeon-hole This Notice But Pay At Once And Prevent Lapse of Membership.

"1.   If paid at a Depository Bank, in April, this notice will be stamped 'Paid,' by the Banker, and will then be your voucher for the amount.   He will at the same time stamp and mail the enclosed postal card to notify us of the credit;

"2.   *Banks are not authorized to receive money on this call after April 30, 1907.   See other side.*

"3.   Payments to banks not acting as Depositories by· appointment of this Association will not be recognized, and if no authorized depository is convenient members must remit full amount to the Home Office.

"4.   Remittances by mail should be by Draft or Money Order, *payable to the Bankers Life Association* but the same shall not constitute payment unless actually received at the Home Office during the month of April, 1907, in compliance with the by-laws and this notice."

On the back of the notice are printed, "Instructions as to Delinquent Payment," and printed in large type is this:

"5.   If payment is not made on time, but is sent afterward, the health certificate below must be executed and the sum of fifty cents added to the remittance.

"6.   All moneys received after the expiration of the time allowed for payment will be held subject to reinstatement or return at the option of the Association.

"7.   This Association reserves the right to require a satisfactory medical examination prior to reinstatement.   The examiner to be named by the Association and examination to be paid for by the person applying."

Following these instructions is the health certificate required, as follows:   (It was in blank, but when sent on by plaintiff was filled up and we give it as it was filled up and sent to defendant by plaintiff.)

"HEALTH CERTIFICATE.

"I, John D. Smoot of Memphis, State of Missouri, having lapsed my membership in The Bankers Life Association of Des Moines, Iowa, and desiring to be reinstated therein, do declare, guarantee and warrant that I am by occupation a lawyer, that I am of sound constitution, good health and temperate habits; that since the date of my application I have sustained no personal injury, and have been afflicted with no disease or sickness, and have been attended by no physician, except as written herein. (Give nature and date) .........
................I have fully recovered from such disability and I have not made an application for insurance to any other company, association or society upon which a policy or certificate has not been issued.

"It is agreed that the above statements are warranties and are the consideration for any reinstatement made hereon which reinstatement shall be void if the above warranties be untrue in any respect.

"Dated this sixth day of May, 1907.

"(Sign here.)          JOHN D. SMOOT.

"Age, 42. Certificate 18554.

"Attest I. L. BAKER."

It is averred that this notice, with these instructions and blank forms were mailed to plaintiff, duly addressed and deposited in the postoffice, postage prepaid, and that the sum of $4.20 was the correct assessment upon the guarantee deposit of plaintiff, as provided by the resolution, and was payable by plaintiff during the month of April, 1907, provided plaintiff desired to remain thereafter a member of the defendant association. It is further averred that neither the plaintiff, nor any one for him, paid the amount of the assessment, Call No. 96, during the said month of April, 1907. It is averred, "That the certificate filed in this suit provides among other things, as follows: 'Upon the failure of the above named member to make any

payment due from him to the association at its maturity in January, April, July or October, of each year, his guaranty deposit shall be forfeited and his membership shall thereupon cease;' " and that the membership of said plaintiff, by reason of the failure to pay said assessment, Call No. 96, terminated at the end of the month of April, 1907, and that all interest of plaintiff, or his beneficiaries, in such membership, thereupon ceased and determined. It is finally averred that plaintiff had lapsed his membership and was reinstated in the defendant association on August 9, 1907.

No reply seems to have been filed.

The case was tried by the court without a jury, a jury having been waived.

Plaintiff introduced and read in evidence the certificate of membership, as follows:

## "CERTIFICATE OF MEMBERSHIP.

"This is to certify, that in consideration of the statements contained in his application, No. 16793, which is made a part of this contract, and the sum of sixty-three dollars, John D. Smoot, of Memphis, Mo., by occupation lawyer, aged forty-two years, has this day been admitted to membership in this association, and that in the event of his death, during membership, his beneficiary shall be entitled to a sum of money equal to two per cent of the aggregate amount of the guarantee fund, as may appear by the books of the association on the first day of the month in which the death of such member may occur; provided, that the beneficiary of a deceased member shall not receive over two thousand dollars for this certificate of membership, and the return of the guarantee deposit given by him to the association amounting to forty-two dollars.

"Upon the failure of the above-named member to make any payment due from him to the association at its maturity in January, April, July or October, of each

year, his guarantee deposit shall be forfeited, and his membership shall thereupon cease.

"This certificate to become null and void, if death occur from self-destruction within two years from this date, the member being sane or insane, or if the member is or shall become habitually intemperate in the use of intoxicating liquors, chloral, cocaine or opium.

"The amount due under this contract to be paid to Anna D. Smoot, wife, at the Home Office of the Association upon satisfactory proof of claim, to be supplied by the beneficiary, in the event of the death of the beneficiary prior to that of the member, or in case none is named, the benefit then to be payable to the legal representatives of deceased member.

"Witness the signature of the President, countersigned by the Secretary, and the Seal of the Association hereto affixed the date above written.

> "Edw. A. Temple, President.
> "A. C. Stilson, Secretary.

"(Seal.)

"Medical examination made by R. Wagner, M. D.
"Application taken by J. W. Evans."

On the back of this certificate the following appears:

"Benefits due from this Association are in the main provided for by assessments on certificate holders, and are secured by a fund deposited with the Auditor of the State of Iowa under authority of law."

Plaintiff did not read this indorsement in evidence, but over the objection of plaintiff that it was "incompetent, irrelevant and immaterial," defendant read it in evidence, the court saying, "I will reserve my ruling until later. Let it be admitted."

The application referred to in the certificate as the basis and part of the consideration for the issue of the certificate was not offered or produced in evidence.

Plaintiff as a witness in his own behalf testified, when asked when he had made a tender of payment of the March assessment, due to be paid in the month of April, 1907, testified that he had been away from home and came back on the second of May; supposed his insurance had been attended to; supposed it had been paid; had made arrangements with a bank to pay it, to pay the premium, but found it had not been done, so he sent a check for $4.20, or more correctly, a draft for that amount drawn on New York or St. Louis, to the defendant, which defendant immediately returned; had received a letter from defendant which he cannot find, but the letter was to the effect that he should sign the health certificate and send fifty cents more. The letter which he sent was afterwards produced and read in evidence by the defendant, dated Memphis, Missouri, May 2d, addressed to Mr. Nollen, the secretary of the defendant and is as follows: "Being absent at the time my assessment number 96 on the policy No. 18554 fell due, I thought I had arrangements with the bank to pay it but it seems like I had not. Please find enclosed draft for $4.20 amount of the call, which I hope may be satisfactory." In reply to this he received a letter dated May 3d, addressed to him, a copy of which was afterwards produced by the defendant and offered in evidence, the plaintiff having testified that the original had been lost and the copy being duly verified. This letter is as follows: "Your remittance for half of call 96 is herewith returned with health certificate to be signed, and fifty cents to be added for reinstatement, if granted. Will write you later upon the matter, as we wish to make some investigation relative to your habits as to the use of liquor."

Plaintiff testified that on receipt of this he sent back the draft for $4.20, together with fifty cents in postage stamps and the health certificate. This he did by letter of May 5th. The health certificate is in the

form as heretofore copied, the blanks filled up in it as there shown. Plaintiff testified that in answer to his letter sending the certificate and draft and postage stamps, he received a letter from defendant, which he produced and read in evidence. It is on the letterhead of the defendant, dated at Des Moines, Iowa, June 6th, addressed to plaintiff and is as follows:

"Dear Sir: Your letter of the 5th inst. has been received, with draft and postage stamps which we herewith return, your reinstatement having been declined.

"You seem to overlook the fact that you have had insurance for the full value of your payments, excepting the guarantee fund, which we have offered to return included in the $100, which we proposed to pay you instead of paying attorney's fees.

"As you seem to contemplate an amicable settlement, we are ready to confer on that feature in the interest of both parties.

"Respectfully,

"THE BANKERS LIFE ASSOCIATION,

"By TEMPLE."

Plaintiff appears to have written another letter on the 6th of June, the same date that the defendant had written to him and he produced and read in evidence a letter of date May 8th, addressed to him which is as follows:

"Dear Sir: We have your letter of May 6th, enclosing draft for $4.20 with postage stamps to the amount of 50c forwarded with view to reinstatement of your lapsed certificate No. 18554, as we wrote you on May 3d, we wish to make some investigation relative to your habits. We do not care to hold your remittance pending such investigation and return the draft and stamps herein.                    Yours truly,

"THE BANKERS LIFE ASSOCIATION.

"By GREEN."

In this letter he received back the draft for $4.20 and the fifty cents in postage stamps. Plaintiff acknowledged having received the April call, for which he had made this remittance in May, and admitted that the copy produced by defendant and introduced in evidence (hereinbefore copied) was a correct copy of the original which he had received. He testified that he had made efforts to be insured since May, 1907, and for the last two years; knows that he is not an insurable subject and has been turned down in the last two years on account of his health and is not an insurable risk on account of his health, age and habits; for these reasons he had been refused by other companies. Asked why he had signed the health certificate showing that he was in good health, he said he did that because that was the form of certificate presented to him; that he was not a man broken down in health, has a good constitution and reasonable health, is not a physical wreck or anything of the kind, and, outside of his age, is not in bad condition; wanted to keep the insurance for his children and that if there was going to be a lawsuit about it, he would rather have it now than after his death; admitted that the defendant had offered to reinstate him since he brought the suit, but that he had refused because he had brought the suit and preferred to have it determined and does not now want to be reinstated; if he is to have any litigation he said, he would rather have it while he was living; "have been paying money into this thing for seventeen years and think I have some rights," testified plaintiff.

An agent for a regular life insurance company, produced and testifying as a witness on behalf of plaintiff, testified over the objection of the defendant, that at the age of the plaintiff a $2,000 life insurance in a regular company would cost $147 a year; that the expectancy of the plaintiff was fourteen and three-fourths years. Doesn't think that plaintiff could get an insurance policy in a good, solvent company; had tried to

get him into his own company a year and a half or two years ago, but the company declined to take him, except on a policy with a heavy lien against it, the company claiming that plaintiff was an impaired risk. His company had offered to take plaintiff for $1,500 or $2,000, at an annual premium of $300 or $350, policy payable at death.

On cross-examination the witness stated that the policy that he was negotiating with plaintiff for, was ordinary life. In his own experience he did not know of a policy being issued by a regular company to a man of sixty years or upwards; stated that he could not figure on the value of reserve in an assessment company; that in an old line company there is so much guaranteed on their policy; that an actuary could figure it out on an old line form; that he was not an actuary.

Mr. Hudson, another witness called on behalf of the plaintiff, testified that he had collected for the defendant; that it was the custom of the company when a person was in default, on sending a health certificate and paying fifty cents additional, to reinstate them; had known of some being reinstated when they were in default for a week and some that had run over as long as three weeks.

This was all objected to by defendant and exception duly saved.

On cross-examination witness stated that the instructions were, that the collections were all due on the assessment on the last day of the month, and that, as depositories for the company, they did not collect, or attempt to collect, after the expiration of the month; if it was not paid before the end of the month, he was not allowed to receive it; when members were reinstated there was an affidavit to a health certificate for reinstatement and the party paid fifty cents. The health certificate was sent to the company for its action.

On redirect examination he testified that he knew

persons who had been reinstated by the defendant on sending on the health certificate and the fifty cents.

Mr. Webber testified that he was cashier of the Gorin Savings Bank which had acted as collector for the defendant at Gorin for the past fourteen or fifteen years. Shown the health certificate required, recognized it as the form in use; was a member of the association himself and had lapsed in the payment at one time, about a week; was reinstated upon sending on a health certificate and fifty cents; that had been the custom of the company in that locality. This was objected to, objection overruled and exception saved. Stated that the basis of reinstatement in all the cases he knew of was the health certificate; that is to say, if the person showed he was of temperate habits, in good health, etc., he might be reinstated; did not know of any one being reinstated unless these conditions were complied with. This was all the testimony introduced by plaintiff in chief.

The defendant here asked a declaration of law, that under the pleadings and evidence, the finding of the court must be for the defendant, which was overruled and defendant excepted.

The defendant then offered in evidence the letters above referred to and also the health certificate which the plaintiff had filled out and signed, of date August 6, 1897, and on which he had been reinstated at that time. This health certificate on which this reinstatement was made was in the form hereinbefore given. It was offered by the defendant for the stated purpose of showing that under the law, the certificate of membership of the plaintiff dates from the date of this health certificate and reinstatement thereunder, of August 6, 1897, and that if plaintiff was entitled to anything, it would have to date from that period. It was objected to by plaintiff and the objection overruled. Plaintiff then offered and read in evidence the endorsement on the back of plaintiff's certificate of membership which

has been heretofore set out. · It then offered and read
in evidence sections 1784, 1785, 1788, 1789, of the Code
of Iowa as plead in the answer. No objection was made
to them as evidence or as being properly authenticated,
the objection being made that they were "incompetent,
irrelevant and immaterial."

Mr. Nollen, introduced as a witness for the defend-
ant, testified that he is its secretary, has been connected
with it since 1893. In addition to his duties as secretary
has also acted as actuary. Produces the by-laws and
articles of incorporation of the defendant and identifies
them as the ones under which the company is and has
been operating. The articles of incorporation were then
introduced and read in evidence, the original being dated
as filed and recorded in the office of the Secretary of
State of Iowa, June 24, 1878, amendments made to them
on the 9th of November, 1886, and approved by the
Attorney-General of Iowa of the date, and amendments
of article 11 of date November 18, 1893, approved by
the Auditor of the State and the Attorney-General of
State on that date. These articles and amendments ap-
pear as regular under the Iowa laws before referred
to. The by-laws of the defendant were offered and ad-
mitted, particular attention being called to the sections
which were relied on, these being read in evidence.
Objection was made to the reception of these in evi-
dence, on the ground that they have no reference to the
policy, that is, no power to pass such by-laws and they
are irrelevant and incompetent and constitute no de-
fense. The court said as to the objection, "I will re-
serve my ruling until the argument." Plaintiff then
produced and offered in evidence the authorization of
the Auditor of the State of Iowa, as required by the
law of that State, granting authority to defendant to
continue in business as an assessment association for
the ensuing year. This certificate was objected to as
irrelevant, etc., the court saying as before that he would
reserve his ruling on the point until later, and it was

admitted subject to this· reservation. The certificate sets out, after details of the resources of the association, that the association has fully complied with the provisions of chapters 7 and 8, title 9, of the Code of Iowa, relating to assessment insurance companies, and is authorized to transact business in that State in accordance therewith the ensuing year. The certificate of authority to do business from the insurance department of Missouri was produced and offered in evidence. It was objected to by the plaintiff because the evidence already introduced shows that the defendant could not be an assessment company under the laws of the State of Missouri, and there is nothing to show that the defendant had authority to do business in Missouri at the time the policy was issued on which the suit had been instituted; that they only produce a certificate for one year, authority for doing business in the year 1907, and that it is incompetent, irrelevant and immaterial, to which objection the court said: "I will reserve my ruling on this matter for the present. It can be admitted, and I will pass on it later." The certificate was then read in evidence, authorizing the defendant "to do business of life insurance on the assessment plan" in the State of Missouri until the first of February, 1908, and was signed by the superintendent of this State.

This witness was asked to state how the business of the association is actually carried on with reference to the procuring of money necessary for the payment of benefits, to which the plaintiff objected because incompetent, irrelevant and immaterial. The court announced he would reserve his ruling and permit the witness to answer, whereupon the witness answered: "The board, of directors determine every three months the amount which may be required to pay current claims." Asked by plaintiff's counsel if the board kept a record of the meetings, and answering in the affirmative, objection was made and the objection sustained,

but the witness apparently by permission of the court,
proceeded to answer that they ascertained the amount
necessary to be levied in order to meet the payment of
these claims and then made an assessment. Asked by
plaintiff if they kept a record of these proceedings, he
answered that they did, whereupon counsel for plaintiff
interposed the objection that the record was the best
evidence, to which the court said: "I will overrule the
objection at this time," and plaintiff's counsel excepted.
The answer of witness, as above was permitted to stand.
Witness further testified that the total amount required
for all losses having been determined, then each mem-
ber pays his percentage, figured on his guarantee. Asked
to state what, if anything, the company does with refer-
ence to charging any fixed or level premium, and objec-
tion being made by plaintiff, because of its incom-
petency, irrelevancy and immateriality and because it
calls for a conclusion of the witness on a question to
be determined under the law on the face of the policy,
the court saying he would reserve his ruling, permitted
the witness to answer and the witness answered that
the association has never charged any level premiums,
only charges enough to pay the expenses of the insur-
ance. Asked if he had knowledge of the assessment
made in March, 1907, he said that he had; that he was
present as secretary and member of the board when it
was made and that he had personally reduced the reso-
lution to writing and produced a copy of it, duly at-
tested, which was read in evidence. The resolution is
numbered 3887, passed at a meeting of the board of
the defendant, held at Des Moines, Iowa, the 26th of
March, 1907, recorded in the proceedings of the board
and is to the effect, "That an assessment of ten per
cent be, and the same is hereby levied upon the member-
ship of this association, based pro rata upon the guar-
antee fund for the purpose of providing funds for the
payment of death losses, said assessment to be due and
payable during the month of April, 1907, and to be

designated as Call No. 96." Witness further testified
that, as secretary of the association, he has the custody
of the records showing the assessments and payments
made by the plaintiff in this case; produces the paper
containing a transcript of the entries under the cer-
tificate issued to the plaintiff from date of membership
down to assessment No. 96, levied in March and pay-
able in April, 1907. This was the assessment which was
not paid. These assessments run in amount from
ninety-six cents, the lowest, to $6.30, the highest. Asked
to state as an actuary, whether, upon the basis of pay-
ments made by plaintiff, any reserve would be created
under the policy of plaintiff on the assessments to which
he has testified, he answered that there would not be a
reserve value; that there would not be any net value
to the certificate of membership on May 1, 1907. Asked
if he had computed the present worth of $2,042, taking
into consideration plaintiff's life expectancy of four-
teen and three-fourths years, would be worth if paid to-
day, said it would be $864.84; that that was the present
worth of $2,042, payable at the expiration of plaintiff's
expectancy of fourteen and three-fourths years on a six
per cent basis; testified that there was no way of com-
puting, with any degree of certainty, what the amount
of assessments would be under the contract, for the
period of expectancy, because the premiums or assess-
ments would vary according to the actual need of the
company, and that these payments would have to be
calculated at present worth and that amount deducted
from the present worth of $2,042, to get at the value
of the policy, if payable now; that under an old line
plan, the cost of insurance for $2,042 being $72.12 per
annum, the present value of premiums of $72.12 per
annum for the expectancy of plaintiff at six per cent
would be $702.64. That is to say, the difference be-
tween the present worth of the $2,042 and the present
worth of premiums to be paid during the fourteen and
three-fourths years would be $162.20. If the contract

was figured on the basis of old line insurance, the present worth would be $453.53, provided a level premium was collected on the policy.

On cross-examination, asked what was the present value of the policy in suit, he answered that it would have no present net value and no net value could be figured on it. Asked on cross-examination as to what reserve the defendant company had, answered that on January 1, 1908, it had $4,745,395.00. Shown a card which gave eight million dollars as assets of the company, witness stated that that represented money that had been paid in by members for guarantee deposits, and interest which has accrued on these and other investments; that they hold municipal bonds, real estate and guaranteed notes, and these bear interest or produce revenue. Asked what dividends the company made annually, stated that they paid no dividends whatever, and did not pay their directors any salary.

On redirect examination asked as to what was meant by the reserve fund, he said that in the case of the defendant, it is a fund accumulated under the provisions of the articles of the association; is not a net reserve as known in law, or in the sense that is produced by level premiums, as in the case of old line companies, because defendant has no level premiums. The entire assets of the defendant on January 1, 1908, were worth $11,736,715.76. The full amount of insurance in force at that time was $330,238,000.00, and if this entire fund was divided up between the several members in proportion to the amount of their insurance, the plaintiff, under his policy, would be entitled to $72.15.

Mr. Earle, a director and general counsel of the defendant, examined as a witness, produced and identified the letters and exhibits heretofore referred to which were all introduced in evidence, and Mr. Nollen, being recalled, stated that he was familiar with the practice of the company in sending out notices of as-

sessments, and that they are mailed within ten days prior to the first day of the month on which payments are due, that is, ten days prior to the first day of the month on which they fall due.

The plaintiff, in rebuttal, testified that the policy in suit was contracted for by him at Memphis, Scotland county, this State, defendant then having an agent there.      This was substantially all the testimony in the case.      At the close of it the defendant asked the court to declare, as a matter of law, that under the pleadings and evidence, the finding should be for the defendant. This was refused and defendant duly saved exceptions. The court, at the conclusion of the trial and having taken the case under advisement, found the issues for the plaintiff, "and that the defendant is indebted to the plaintiff on account of the life insurance policy filed in the case," and that plaintiff recover of and from defendant the sum of $1,620 found due by the court, together with costs.      No rulings were made, in terms, by the court, on the objections to the admission of evidence.      Within due time defendant filed a motion for a new trial which was overruled and exception saved, and an appeal being prayed for in due form, it was granted to this court.

REYNOLDS, P. J. (after stating the facts).—The statutes of this State, section 7901, article 3, chapter 119 (Revised Statutes 1899) provide that every contract whereby the benefit is to accrue to the person named therein, "the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan."      Section 7910, also a part of the same article and chapter, enacts that nothing in the article contained shall subject any corporation doing business under the article to any other provisions or requirements of the general insurance laws of this State,

except as distinctly set forth in the article. What is known as the non-forfeiture section, section 7897 is not one of the excepted sections. This case, therefore, turns upon the solution of the questions, first, whether this defendant is a company doing an insurance business on the assessment plan, and if that is determined in the affirmative, whether by the non-payment in April, of the assessment made upon him for that month, plaintiff has forfeited his membership in the defendant organization and all his rights under that membership.

Taking up the first proposition, it is to be said that a certificate of membership, identical on its face with the one now before us, was before the Supreme Court of this State in McDonald against this same Bankers Life Association, reported 154 Mo. 618, with this important difference however, in the McDonald Case, the endorsement or notation which appears in evidence to have been on the back of the certificate here involved, does not appear to have been on the certificate in the McDonald Case, or if it was, it does not appear to have been before the court and is not referred to in any way in the opinion. Repeating that endorsement from the statement, it is as follows: "Benefits due from this association are in the main provided for by assessments on certificate holders and are secured by a fund deposited with the Auditor of the State of Iowa under authority of law." That an endorsement on the back of the certificate is to be construed along with the face of the certificate has been often decided, and seems to have been a controlling fact in Elliott v. Safety Fund Life Ass'n, 76 Mo. App. 562, l. c. 565, 'a decision by the Kansas City Court of Appeals. The case is cited approvingly by Judge MARSHALL in the, McDonald Case, at page 628, on another proposition however, but no adverse criticism is made upon any part of the opinion in the Elliott case. A further distinction between the case before us and the McDonald Case is, that in the McDonald Case, the laws of Iowa,

under which the defendant is incorporated were not properly pleaded, the chapter and sections of the Iowa Code being referred to by members only, neither the language, nor the tenor or effect being set out, and it appears from the statement of the case, that the trial court had also excluded from evidence the articles of association or charter as well as the by laws of defendant corporation. With reference to these as well as the laws of Iowa, Judge MARSHALL says, at page 629, that they were not pleaded in any manner and therefore were inadmissible and were not properly before the Supreme Court, so that, says Judge MARSHALL, "their provisions and requirements cannot be considered or analyzed." He concludes that upon the issues joined and the face of the policy, the defendant is not an assessment company, within the meaning of our statutes, and that, as the contract was executed and consummated in this State, the law of this State must govern and the law of Iowa, the contrary not being shown, will be presumed to be the same as our law, that being the only law before the court. The form of the certificate issued by this defendant at a later date, was before the Kansas City Court of Appeals in the case of McCoy v. Bankers Life Ass'n, 134 Mo. App. 35, 114 S. W. 551. That court held this defendant to be a company doing life insurance upon the assessment plan, founding its conclusion upon the stated proposition that the form of certificates in the McDonald Case and the McCoy Case were radically different. A careful examination of the two forms of certificates, however, fails to satisfy us that there is any difference in substance between the two forms, the difference being more in their wording than in the legal effect. In the McCoy Case, it appears that the laws of Iowa, the articles of association and the by-laws of the defendant were properly plead and were in evidence. Therein lies the substantial difference between the two cases. That is also the situation in this case at bar. The sections of the Code of Iowa, under

which the defendant is organized and incorporated are set out in full in the answer. The articles of association and by-laws of the corporation defendant are properly plead. These were all given in evidence. Furthermore, in the case at bar, the notice levying the assessment, in payment of which the plaintiff was in default, is set out and in evidence, and testimony was introduced showing proper adoption of a resolution levying the assessment. It is also in evidence in this case that the plaintiff was duly notified of this assessment; that he was in default in the payment of it, in that he had not paid it within the time required; that a forfeiture was declared; that plaintiff applied for reinstatement; furnished a medical certificate of his health and condition; that the certificate was rejected as insufficient, the plaintiff's money, which he had sent on, returned to him and reinstatement declined, although it is also in evidence that, after the institution of this suit, the defendant offered to reinstate plaintiff, but he declined reinstatement, saying that he would rather fight it out with the company during his lifetime than leave it to his heirs and children to fight after he was dead. The evidence in this case also shows, without any room for quibble or discussion, that the business of this defendant was carried on on the assessment plan, and that, in the language of our statute, the payment of whatever benefit the members of the defendant organization were entitled to receive is not merely "in any manner or degree," but entirely, "dependent upon the collection of an assessment upon persons holding similar contracts." This constitutes this defendant a company doing the business of life insurance upon the assessment plan. [Westerman v. Supreme Lodge K. of P., 196 Mo. 670; Williams v. St. Louis Life Ins. Co., 97 Mo. App. 449, s. c. 189 Mo. 70.] Being a corporation so engaged in the insurance business in this State, it is not subject to what are called the non-forfeiture provisions of our insurance laws (R. S. 1899, sec. 7897).

That assessment companies, as they are called for brevity, are not subject to this provision of our statute or to the general insurance laws of this State, save in the sections mentioned in the statute itself, which excepted sections have no application to the present case, has been thoroughly settled by the decisions of our Supreme Court. [Hanford v. Mass. Ben. Assn., 122 Mo. 50; Aloe v. Fidelity Mutual Life Ass'n, 164 Mo. 675.]

Furthermore this defendant is incorporated under the laws of Iowa. When a foreign corporation undertakes to do business in this State, it must conform to the laws of this State; it cannot withdraw itself from the operation of the statutes of the state in which it does business by the insertion of clauses in its policies which are contrary to the provisions of our law, nor can it avail itself of the benefits of our laws without bearing its burdens. [Cravens v. Insurance Co., 148 Mo. 583.] In this case, at page 600, will be found an illuminating collection of decisions of the courts of this State and of the national courts, applying this rule. But while this is the rule, there is also another, equally well established, to the effect that when a corporation organized by one State, is authorized by the laws of another State to do business in the latter, it carries with it its charter and the law under which it is incorporated, and persons dealing with it, particularly those who are members of the association or corporation, are bound to take notice of the provisions for control of its affairs and the scope of the authority of its officers and agents, and especially of the business in which it can engage. [Relfe v. Rundle, 103 U. S. 222; Canada, etc., R. R. Co. v. Gebhard, 109 U. S. 527- l. c. 537; Jemison et al. v. Bank, 122 N. Y. 135, l. c. 140; Bockover v. Life Ass'n of America, 77 Va. 85, l. c. 91; Haden v. F. & M. Fire Ass'n, 80 Va. 683; Bocock, Ex'r, v. Alleghany C. & I. Co., 82 Va. 913; Whitehurst's Admr. v. Whitehurst's Widow, 83 Va. 153; Smith v. Cornelius, 41 W. Va. 59, l. c. 74; Giesen v. London & Northwest Ameri-

can Mortg. Co., 102 Fed. 584, l. c. 587; Brown v. Equitable Life Assur. Co., 142 Fed. 835, l. c. 843.]    Our own Supreme Court in the State ex inf. v. Continental Tobacco Co., 177 Mo. 1, l. c. 33, has fully recognized this, holding that a corporation having been organized under the laws of a sister State and being authorized to do business in this State, necessarily brought with it the powers of its charter, unless restricted by the laws of this State.

Furthermore, it is a thoroughly settled principle of law, that the rules and regulations which a corporation adopts, are generally enacted for the government of the corporation in its dealing with third parties, and for third parties dealing with it.    [State v. Overton, 24 N. J. 441.]    By-laws are the rules of law adopted by the corporation for the regulation of its own acts and concerns and of the rights and duties of its members among themselves.    [C. J. SHAW, in Commonwealth v. Turner, 1 Cush. (Mass.) 493, 1 Thompson on Corps., sec. 937, 5 Am. and Eng. Ency. of Law (2 Ed.), p. 88.]    When by-laws have been duly adopted they are obligatory upon all the members of the corporation.    [Hill v. Rich Hill Coal & M. Co., 119 Mo. 9, l. c. 26; Flint v. Pierce, 99 Mass. 68, l. c. 96; Kent v. Quicksilver Mfg. Co., 78 N. Y. 179; McFadden v. Los Angeles Co., 74 Cal. 571.]    All the members of the corporation are chargeable with notice and knowledge thereof.    [Brent v. Washington Bank, 10 Peters (U. S.) 614; Susquehanna Ins. Co. v. Perrine, 7 W. & S. (Pa.) 348; Miller v. Hillsborough M. F. & A. Ass'n, 42 N. J. Eq. 459; Pfister v. Gerwig, 122 Ind. 567.] This is subject to the qualification that by-laws impairing the contract obligations of the members, can not be of force as against that member's contract, without his assent. . This is particularly so as to non-stock associations, associations not for profit, associations practically of the character of this defendant; its members

are conclusively presumed to know its laws and rules. [Coleman v. Supreme Lodge, 18 Mo. App. 189; Borgraefe v. Knights of Honor, 22 Mo. App. 127, l. c. 140.]

Referring then to the laws of the State of Iowa and to the articles of association and the by-laws of the defendant, as given in evidence in this case, this corporation defendant had no power or authority to transact the business of life insurance on any plan other than on the assessment plan, and even if it issued certificates of membership or policies of insurance on any plan or basis other than on the assessment plan, those contracts and policies would be void as *ultra vires* the corporation.

Furthermore it is in evidence in this case that this defendant, a foreign corporation, is authorized by the superintendent of the insurance department of this State to transact life insurance business in this State only and solely on the assessment plan. While it is true that the certificate of the superintendent of the insurance department is not conclusive upon the courts in determining the character of the business carried on by the company, it is also true that the construction placed on the business of the corporation by the executive officers of the government in the discharge of their official duties and exercise of their powers, is always received by the courts as strong and persuasive in the interpretation of the law. It is, however, beyond question, that with a certificate authorizing it to do the business of life insurance in this State on the assessment plan alone, the defendant is confined to that plan of business, and if it undertook to do life assurance on any other plan, it was proceeding without authority of law and business transacted by it in this State, or contracts made by it in this State would be without lawful authority and non-enforceable.

But as before noted, the facts in evidence in this case show that this company defendant in this instance

did transact in this State, the business of life insurance entirely on the assessment plan. The evidence shows that the plaintiff in this case was fully aware of that. He has paid on these assessment notices the assessments demanded of him, varying in amount from a few cents to some six or seven dollars, for the whole period of his membership, so that he cannot be heard to say that he did not know that the defendant corporation, of which he was a member, was actually doing business, as far as he was concerned, on the assessment plan, no matter what might have been in or omitted from the membership certificate. It follows that under the terms of his certificate of membership and under the laws of Iowa, and under the articles of association of the company and under the by-laws of the association of which he was a member, that, upon the non-payment of the assessment levied and payable in April during that month, he forfeited all rights as a member of the association: provided always, that his membership was forfeited lawfully and without fraud and in accordance with the provisions of the company defendant of which he was a member. If the contrary appeared, the forfeiture would be of no force and effect and plaintiff would be entitled to relief,—certainly to reinstatement, if alive, or in case of his death, the way would be open to his heirs or beneficiary under his membership certificate, to recover the amount due under his contract with the defendant. It is further to be said in this case that taking the view of the plaintiff, that this is a regular insurance company and not one conducted on the assessment plan, he does not pretend to bring himself under the law of this State (R. S. 1899, sec. 7898) which forbids forfeiture after the payment of three annual premiums; nor does he ask for a paid up policy, as provided in section 7897; and being alive, he does not come under section 7899. What he does sue for is damages arising out of the cancellation of his policy, averring that it was cancelled wrongfully and unlaw-

fully and that the cancellation was a violation of the contract of insurance alleging that he had complied with all the conditions of the policy and that by reason of age and health he is unable to procure re-insurance and hence he demands $2,000 damages. Whatever right he might have against the defendant, if it was conducting business on other than the assessment insurance plan, he has no right, under the case made by him in this present action against this company, a company conducting the business of insurance on the assessment plan, to recover in this action. The contract in terms provides that failure to pay at the times stipulated, subjects the membership and the contract to forfeiture. The proof shows, in fact, the plaintiff's own acts and letters admit failure to pay the assessment due in April within that month. The failure produces the forfeiture; it required no act of the defendant to declare it; forfeiture fell in by the failure to pay. The contract could only be reinstated by the affirmative act of defendant. There is no evidence in the case tending to show that the defendant company acted fraudulently or unlawfully or otherwise than within its right in refusing reinstatement and in insisting on the forfeiture. While forfeitures are not favored in law, if parties contract for them, the courts cannot do otherwise than sustain them and enforce the contract, no fraud or misrepresentation appearing. Nor is the fact that the defendant waived the right of forfeiture in other cases, any estoppel against it, in exercising it against this plaintiff. This evidence of the acts of the defendant in other cases and with others, should not have been received. If defendant had waived compliance by plaintiff of the requirement that he pay within the month and to such an extent as to lead him to believe that a forfeiture would not be exacted—if it had done anything in dealing with him, to show that it would not insist on prompt payment, it might have been estopped from enforcing forfeiture as against him. [James v.

Life Ass'n, 148 Mo. 1; McMahon v. Maccabees, 151 Mo. 522, l. c. 537.] But even in the cases in which it was allowed to be proven that parties in default had been reinstated, the proof is that they had furnished health certificates to the satisfaction of the defendant; that happened even in the case of plaintiff, when he defaulted in 1897. He was reinstated then, on furnishing a satisfactory health certificate. Nor was there any evidence that plaintiff knew of these cases of alleged waiver of time of payment, and that with a knowledge of them and acting on them, he had postponed payment within the allotted time. We do not intend to decide, however, that proof of these things would have been admissible or that if proven they would have constituted an estoppel.

In the present instance, when forfeiture occurred in May for failure to pay the assessment due in April, 1907, reinstatement was refused, the defendant declining to accept the health certificate furnished as satisfactory, as it had a right to do, and that terminated plaintiff's membership.

It is difficult to determine upon what theory the learned trial judge decided the case. The most material and important testimony and controlling testimony if admitted, which was offered, was admitted, with the reservation that the court would pass on its admissibility "when he determined the case." But he did not even then rule on it, and whether he considered it or not as competent, relevant or material, we cannot say. The practice of withholding rulings on objections when objection made, has been frequently condemned. In this case, it is so prejudicial as to warrant a reversal for that alone, if proper exception had been saved to the refusal of the court to pass on the admissibility of the testimony when offered. Passing over this, however, and assuming that this testimony was excluded, on no theory that we are aware of, can plaintiff in this case recover the face value of the policy—$2,042, ma-

turing only on his death.    If the learned trial court undertook to award plaintiff the present worth of his policy, the evidence shows that the present worth of $2,042, payable in fourteen and three-quarters years is $864.80, without allowing for payment of assessments by the plaintiff in the interval, the present worth of which is testified to be $702.64, leaving net value of $162.16.    The testimony is, that if the surrender value is calculated on the basis of old line insurance, with level premiums, it would be $453.52.    How the trial court arrived at $1,620 as the measure of damage is something we cannot understand, taking into considera-- tion the undisputed facts in the case.    It is sufficient to say, that it is not only unsupported by any evidence in the case, but is contrary to the undisputed evidence.

This company being one carrying on its business on the assessment plan, with no level premiums, its policies or certificates of membership having no surrender value, like all similar organizations, furnishes mere temporary insurance; it is without a reserve fund applicable to payment of losses, as the reserve fund of an old line company always is supposed to be.

In conclusion we are bound to say that however harsh the action of defendant may have been in this case, as long as it does not appear from any facts in the case that its action was brought about by fraud or in disregard of its own laws or in violation of any of its own rules, regulations and by-laws, we are powerless as a court to afford remedy in this action.    As great a hardship as the loss of this insurance undoubtedly is to the plaintiff, we cannot in this form of action and in the case made, afford him redress.

The judgment of the circuit court is reversed.    All concur, in the result, *Goode, J.,* however, expressly reserving opinion as to whether suit would lie in equity to reinstate the policy.