**Helen M. Stringham, Administratrix, Plaintiff in Error, v. Bankers Life Association, also known as Bankers Life Company, Defendant in Error.**

**Gen. No. 27,560.**

1. INSURANCE—*right to have guarantee fund applied to prevent forfeiture of life policy for nonpayment of assessments.* Under a contract for life insurance in a company which operates solely on the mutual assessment plan and requires the member to pay a specified sum as a "guarantee fund" to be paid to the beneficiary on the member's death or forfeited to the association for any default in payment of assessments by the member and, when so forfeited, to be applied to other funds of the association, and which provides that any failure to make payments when due shall work a forfeiture of all payments and terminate the membership, a member's "guarantee fund" does not constitute a fund which may be applied to relieve his beneficiary from the effect of his failure to pay an assessment within the time limited for payment, even though the member was mortally ill and unconscious on the last due date for such assessment, where the entire contract construed together clearly provides that the guarantee fund can only be resorted to for the purposes specified, that forfeiture for nonpayment automatically follows default and that all rights under the certificate of membership absolutely cease upon his death while in default.

2. INSURANCE—*member's "guarantee fund" not applicable to payment of delinquent assessments.* Under a contract of life insurance which requires the member to pay a specified sum to a "guarantee fund," which fund shall be paid to the member's beneficiary upon the latter's death in good standing or be forfeited for any default in payment by the member, a provision of the charter of the company that such guarantee fund shall consist of deposits pledged by each member "for the prompt payment of assessments" does not make such member's guarantee fund applicable to the payment of an assessment of which he was in default at the time of death

where subsequent provisions of the charter specifically provide for the application of such guarantee fund upon forfeiture to other funds of the association.

3. INSURANCE—*when charter provisions for forfeiture for failure to pay assessments controlling.* A provision of the by-laws of a life insurance association which operates solely on the assessment plan, that allowances to beneficiaries of a deceased member shall not be impaired by delinquency in payment of assessments and which makes forfeited guarantee deposits the ultimate source from which such arrearages are made up, is for the protection of such beneficiaries only and cannot be extended to nullify a forfeiture of all rights of a member who died in default of a payment of an assessment, where the provisions of the insurance contract between the association and the members consisting of the charter, by-laws, certificate and application, specifically provide that where a member shall be so in dafault all his rights under the contract shall be absolutely forfeited.

4. INSURANCE—*member's "guarantee fund" as collateral security for payment of delinquent assessments.* Where a member of a life insurance association is required to deposit a specified sum upon becoming a member of such association as a "guarantee fund," the fact that such association may draw money from the "reserve fund," which is made up in part of forfeited guarantee deposits of defaulted members, to pay death benefits when the benefit fund becomes depleted, because of defaults in the payments of assessments, does not make the deposits by the members in the "guarantee fund" collateral security for the payment of a member's delinquent assessments.

Error by plaintiff to the Circuit Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed December 11, 1922. Rehearing denied December 22, 1922.

ELIZABETH PERRY, for plaintiff in error.

W. S. AYERS and O. S. BAYLIES, for defendant in error.

MR. JUSTICE DEVER delivered the opinion of the court.

, Plaintiff, as administratrix of the estate of Ernest Morehouse, deceased, brought suit in the circuit court of Cook county against defendant on a certificate of insurance issued by the latter to deceased.

At the close of plaintiff's evidence, the court on motion of defendant instructed the jury to render a verdict in favor of defendant. The jury did as directed and a judgment was entered upon the verdict, which plaintiff seeks to reverse by her appeal to this court.

The facts of the case were stipulated by the parties on the trial.

Defendant, an Iowa corporation, is authorized under its charter to transact an insurance business "upon the mutual assessment plan, in which the payment of all assessments shall be secured by a guarantee fund contributed by each member pro rata according to the age at entry; this guarantee fund, together with the insurance provided in the certificate of membership and by-laws of the Association to be forfeited upon failure of a member to pay his assessments within the time prescribed by the by-laws of the Association," etc.

The guarantee fund which defendant was authorized to secure from its membership was under defendant's charter to "consist of the deposits pledged by each member of the Association for the prompt payment of assessments, and the said deposit required of each member shall consist of the sum of one dollar for each year of the age of member at date of application, counted at nearest birthday, and may consist of cash or a note at four per cent interest, payable on such terms as the Board of Directors may prescribe, and the said Board shall have the power to declare a certificate of membership void and of no effect upon defalcation of payment, for any note executed for said deposit."

Deceased, Ernest Morehouse, on September 28, 1908, entered into a written contract of insurance with defendant which provided that the certificate of membership and the application therefor, together with defendant's articles of incorporation and by-laws, were to constitute the agreement between insured and de-

fendant. At the time Morehouse entered into the contract with defendant and in compliance with the latter's by-laws and articles of incorporation, he executed the following instrument:

"Chicago, Ill., Sept. 18th, 1908. For value received I promise to pay The Bankers Life Association, at Des Moines, Iowa, the sum of Thirty-nine Dollars with semi-annual interest at four per cent per annum, payable in April and October of each year. This note is payable in four equal installments to become due as follows: One-fourth in October, 1909, one-fourth in April, 1910, one-fourth in October, 1910, and the other one-fourth in April, 1911, and payment at any depositary of the Association shall operate as full release of the maker hereon. It is given for insurance, and as a pledge that I will maintain my membership in the Association. It is not negotiable, and becomes void in the event of my death before maturity, but in case of lapse of membership I agree that all unpaid installments shall become at once due. Depositary No....... $39.00    Ernest Morehouse."

The insured at the time he became a member of defendant association paid it $58.50, $39 of which was represented by the writing above quoted, the balance, $19.50, to be paid into a contingent fund, was paid in cash. The certificate of insurance issued to insured provided that in the event of the death of insured while he retained his membership in defendant association his "beneficiary shall receive the sum of Two Thousand Dollars, and the Guarantee Fund deposited with the Association by the said member amounting to Thirty-nine Dollars." It should be kept in mind throughout that the $39 paid by insured was, on his death while in good standing in defendant association, to be paid with the principal sum named in the certificate to his beneficiary. Deceased paid all assessments levied excepting one for $5.46 due and payable October 1, 1917. Under defendant's by-laws insured had thereafter until November 1, 1917, to pay this as-

sessment. On October 31, 1917, insured was stricken with cerebral hemorrhage; he became unconscious and remained so until his death, which occurred November 7, 1917. At the time of his death the due assessment had not been paid. Defendant denies any liability under the certificate of membership issued to deceased because of the failure to pay the assessment due October 1, 1917, and it asserts that the failure to pay this assessment within the stipulated time automatically worked a forfeiture of deceased's membership in defendant association and of the certificate of membership issued to him.

The plaintiff's sole contention is that deceased was not in default in the payment of the assessment in that it is apparent that the intention of the parties to the contract, as gathered from its terms and conditions, was that the payment of $39 into defendant's guarantee fund constituted merely a deposit to insure the prompt payment of assessments to become due by insured. The certificate of membership issued to insured expressly provided that upon failure of insured to make any payment due by him to defendant at maturity "his guarantee deposit and all other payments made shall be forfeited and his membership thereupon cease."

Under the articles of incorporation it was provided that defendant was to keep upon its books special and distinct funds, to wit:

"The Guarantee fund, the Benefit fund, the Reserve fund and the Contingent fund and such other funds as the Board of Directors may hereafter establish."

Section 2 of article 10 provides that the guarantee fund was to consist of

"deposits pledged by each member of the Association for the prompt payment of assessments and the said deposit required of each member and shall consist of the sum of one dollar for each year of the age of member at date of application, counted at nearest birthday, and may consist of cash or a note at four per cent

interest, payable on such terms as the Board of Directors may prescribe, and the said Board shall have the power to declare a certificate of membership void and of no effect upon defalcation of payment for any note executed for said deposit."

The benefit fund was to consist of moneys collected by pro rata assessment levied upon the guarantee fund to meet the payment of losses occasioned by the death of members. The reserve fund was to consist of:

"all guarantee deposits forfeited to the Association by lapsed members, and the interest accruing from all funds of the Association of whatever nature; all gains, discounts and margins realized on sale of bonds and mortgages and on real estate taken under foreclosure or otherwise and all unused surplus arising from the contingent fund and all other sources. This reserve shall be set apart as an emergency fund for the purpose of providing for death losses in excess of one per cent per annum of the membership of the Association, and for the further purpose of temporary advances for the payment of death losses when the benefit fund is exhausted."

The contingent fund was collected for the purpose of defraying expenses connected with the transaction of defendant's business and was to "be composed of the membership fee, a sum equal to fifty per cent of the guarantee deposit of each member, to be paid on admission, and an annual tax of six per cent on the guarantee deposit, for expenses, to be collected in such instalments and at such times as the Board shall direct, provided, that the Board may increase those fees and annual expense items at their discretion, but no such increase shall effect members admitted prior thereto."

The articles further provided that each fund shall be used "expressly" for the purpose indicated and that no appropriation was to be made from one fund for the purpose of paying a claim due upon another and that in providing funds by assessment or otherwise to meet claims against defendant its board of directors was authorized to determine from time to

time the amount deemed necessary to pay such claims.

Defendant's by-laws, which, by the contract, bound insured, also provided for the creation of the guarantee fund by payments as provided in the articles of incorporation. They impose upon defendant's board of directors the duty of levying all assessments and of making necessary provisions for providing the benefit fund and also the contingent fund of defendant. The by-laws provided that in the event of any note, check or draft given by a member in payment of money due the association should not be paid at maturity "the certificate shall lapse in the same manner as it would had the payment not been attempted."

Section 4 of article 4 of the by-laws provides that:

"In the event of the forfeiture of the rights and privileges of a member of this Association the guarantee deposit pledged by such members shall become forfeited absolutely and become the property of the Association."

Section 5 of article 4 provides that:

"In the event that assessments are not paid promptly the allowance to beneficiary of deceased members shall not thereby be impaired or lessened, but the sum of such arrears shall be taken from the reserve fund, and restored eventually by collection of arrearages or forfeiture of the guarantee deposit as provided in Section 2 of this Article."

In the present case it appears that the small sum of $5.46 was due and unpaid for assessments at the time the insured died, and further, that the circumstances attending his last illness and death were such as would naturally account for his default. Notwithstanding these circumstances, so unfortunately affecting the interest of plaintiff, we are compelled to affirm the judgment.

Section 5 of article 4 of the by-laws expressly refers to and is to be interpreted and construed with the language used in section 2 of article 4. Section 2 of the article definitely provides that upon the failure of any

member to pay any assessment due defendant, his membership in defendant is to be forfeited and his right to any share or interest in its funds or property was to ''cease absolutely at the expiration of the time stipulated in which such payments are required to be made.'' The time for the payment in question was not later than November 1, 1917, and payment was not tendered defendant until sometime within thirty days following the death of deceased, November 7, 1917.

There are expressions in the by-laws and articles of incorporation of defendant which, taken singly, might give some support to the argument made on behalf of plaintiff, but when the certificate of membership and all of the by-laws and articles of incorporation of defendant are considered together, it becomes clear that the intent of the parties was that all rights or interests of insured or of his beneficiary in and to any of the funds or property of defendant ceased absolutely upon the death of insured while in default of payments required of him under his contract with defendant. In the present case this holding seems somewhat harsh, but it will not be contended that provisions in the by-laws and articles of incorporation of an organization, such as defendant, for the prompt payment of assessments are not binding upon members.

In the case of *Lehman v. Clark,* 174 Ill. 279, it was held that where a contract of insurance in an assessment company provides that upon a member's failure to pay assessments due within a certain time the certificate shall become null and void and all benefits received and payments made therein forfeited, the forfeiture provision is self-executing and upon a failure to pay within the time specified the insured at once ceases to be a member. And it has been held that sickness is not a sufficient excuse for nonpayment of dues and assessments. *Scheiber v. Protected Home Circle,* 146 Ill. App. 374.

Plaintiff's main contention is that the certificate of membership and the articles of incorporation and the by-laws when construed together disclose an intention on the part of the parties to the contract to provide for the defaulted payment out of the $39 which had been paid by insured into the guarantee fund. This precise question has been passed upon in several cases decided in courts of last resort in states outside of the State of Illinois. *Hay v. Bankers' Life Co.*, 207 Mo. App. 277, 231 S. W. 1035. In that case the court said:

"On the record before us we can come to no other conclusion than that the defendant company conducts its business solely on the assessment plan. All that it furnishes its members is temporary insurance covering the time for which the member has paid his assessments. There is no reserve value to its certificates of membership which can carry them beyond the period for which the particular assessment has been levied and paid. This question we had before us, and discussed so thoroughly in the case of *Smoot v. Bankers' Life Ass'n*, 138 Mo. App. 438, 120 S. W. 719, that it is unnecessary for us to discuss the question at length. The Kansas City Court of Appeals came to the same conclusion in the case of *McCoy v. Bankers' Life Ass'n*, 134 Mo. App. 35, 114 S. W. 551, in which case it was distinctly held that certificates such as we have before us here were issued on the assessment plan, and were not life insurance, and that such certificates are forfeitable for failure to meet the calls and assessments made upon them. * * * The nature and character of this guarantee fund and the manner in which the business of the company is carried on are so fully set out in the case of *Bond v. Bankers' Life Ass'n, supra* [90 Kan. 215], and here in evidence, that we do not think it necessary to repeat it here. We are of the opinion, and so hold, that the learned trial court committed an error of law in looking to the guaranty fund for the payment of this assessment."

In the case of *Bond v. Bankers' Life Ass'n*, 90 Kan. 215, the court had before it substantially the same question as that presented here and it said:

"As will be observed from the quoted provisions of the contract, the association has four funds, the guarantee, benefit, contingent and reserve, and each belongs to the organization and is subject to its control. No member has any separate ownership or. control of any part of these funds. The guarantee fund is, in a sense, a trust fund to be devoted to specified uses and cannot be diverted to any other use. It is made up of the sums which each member contributes as a pledge that he will pay his assessments when due, and the alternative provisions are that if he does not pay these the deposit shall be forfeited and become a part of the reserve fund."

In the case of *Stubbs v. Bankers' Life Ass'n*, 55 Ind. App. 579, which also deals with a similar question, the court said:

"If the articles and by-laws should be construed and held to permit the payment of mortuary assessments from the guarantee fund, which is wholly made up of the guarantee deposits of members in good standing, that fund might be exhausted, and without any provision for the reimbursement of the same by assessments levied against members, there could be no return of the guarantee deposits to beneficiaries. Without the guarantee fund, held as a pledge and as an inducement to members to continue in good standing, and transferred to the reserve fund on forfeiture of membership for nonpayment of assessments, the strength of the association would be speedily dissipated. As we see it, this guarantee fund is the distinguishing feature of appellee association—the feature which gives it permanence and stability."

In the case of *Hoover v. Bankers' Life Ass'n,* 155 Iowa 322, the court had before it the precise question under consideration here and it held that:

"Notwithstanding these several provisions of the charter, by-laws and certificate, the appellee claims that assessment 106, payable in October, 1909, should have been paid from the guarantee fund. We are unable to find any merit in the contention. Construed in connection with the other provisions set forth herein,

the purpose of the guarantee fund provided for in article 9, sec. 2, of the charter, is to secure to the beneficiaries of members in good standing, at death, the amount called for by the certificate. Thus construed, it harmonizes with the other provisions and accomplishes a purpose that could not otherwise be accomplished. The guarantee deposit cannot, at the same time, be used for the payment of delinquent assessments, and be forfeited to the association for the nonpayment of such assessment. Under the provisions quoted, the guarantee deposit can only be used in one of the two ways specified. If the member dies in good standing, it is paid to his beneficiary—the whole of it, not a part thereof; if he fails to pay his assessments, it is forfeited to the reserve or emergency fund.''

These cases and others cited in the brief of counsel for defendant decide against the contention of defendant, and it was held in the *Bond* case that the provision that the guarantee deposit was to be forfeited for nonpayment of assessments is irreconcilable with a theory that it could be used to pay such assessments.

Section 2 of article 10 of the articles of incorporation provides that the guarantee fund shall consist of deposits pledged by each member of defendant ''for the prompt payment of assessments.'' This language standing alone lends some color to the argument that these deposits were intended to be used to pay assessments due under the contract, but when the section is read with section 3 of the same article, it becomes evident that such was not the intention. Section 3 provides that the benefit fund was to consist of all moneys collected for the payment of losses occasioned by the death of defendant's members and was to be collected pro rata from assessments levied ''upon the guarantee fund of the Association.'' The reserve fund was set apart as an emergency fund out of which temporary advances were to be made to pay death losses when the benefit fund became exhausted. This latter fund con-

sisted in part of guarantee deposits forfeited to defendant by lapsed memberships. The language of section 5 of article 4 of the by-laws would not be effective if opposed to the provisions of defendant's charter. This section merely provides that in the event assessments are not paid promptly allowances to beneficiaries of deceased members should not thereby be impaired, but that the sum of such arrears should be taken from the reserve fund and when so taken were to be restored, eventually, by arrearages or forfeiture of guarantee deposits as provided in the articles of incorporation. As we read this section of the by-laws, its purpose was to protect beneficiaries of deceased members and does not in any sense provide protection to a member of defendant in default.

It is true, as urged, that where ambiguity exists in a contract, such as the one under consideration, and two interpretations may reasonably be drawn therefrom, that one will be adopted which favors the insured. *Monahan v. Fidelity Mut. Life Ins. Co.*, 242 Ill. 488.

The by-laws and articles of incorporation of defendant which provide for the creation and maintenance of the guarantee and reserve funds are not ambiguous. The guarantee fund was not provided to protect members in default of payments due defendant. The purpose of its creation clearly was to provide a practicable method of insuring to beneficiaries payment of benefits provided for in the contracts of insurance. While there may be some doubt as to the precise meaning of section 5 of article 4 of the by-laws, from the whole contract of insurance no doubt can be entertained of the purpose for which the guarantee fund was maintained. If the contention made for the plaintiff should be held to be sound then it would follow as a necessary consequence thereof that the guarantee fund would not be available for this purpose. It would merely serve, in that event, as a fund out of

which defaulting members could have assessments paid. The probable result of this would be to deprive beneficiaries, on the death of a member in good standing, of benefits intended under the contract. In other words, if the guarantee fund could be used for the payment of assessments due by members, it would probably serve that purpose only. To hold that the guarantee fund existed for the purpose of keeping alive a certificate which otherwise would have lapsed for nonpayment of dues, or that it might be used for that purpose, would in our opinion destroy the beneficial purpose intended by the creation and maintenance of the fund.

The deposit of the $39 in question was not made for the purpose of furnishing a collateral security for the payment of insured's assessments. It is true, as urged, that under defendant's charter and by-laws it was permitted to draw moneys from its reserve fund when, because of default in payment of assessments, the benefit fund became insufficient to pay death losses, and that money so taken from the reserve fund was to be thereafter repaid into the reserve fund—all of this was allowable and indeed directed by defendant's charter and by-laws—yet we are unable to agree with the contention that because of this insured or his beneficiary had a legal right to have the defaulted assessment paid out of the guarantee fund.

The judgment of the circuit court is affirmed.

*Affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.