THOMAS KNOTT, Adm'r of the Estate of ALFRED S. PORTER, deceased, MARY J. PORTER, ADA PORTER, WILLIAM PORTER and OLIVER T. WELCH, Respondents, v. SECURITY MUTUAL LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, February 19, 1912.

1. LIFE INSURANCE: Old Line or Assessment: Contracts. The character of a life insurance policy is determined by the nature of the contract it expresses. If the payments to be made by the insured are unalterably fixed by the contract, it is assessment insurance; and where the premium is fixed and unalterable and the liability incurred by the company is also fixed, definite and unchangeable, it is an old line policy.

2. ————: ————: Ultra Vires. Insurance companies cannot masquerade as assessment companies and then repudiate their obligations under old line contracts made by them, after collecting and retaining the premiums, on the ground that they had no authority to make such contracts.

3. ————: ————: ————: Raising Premium. Where the face of an life insurance policy unalterably fixes the amount of the benefit and also the amount and time of payment of the premiums and gives the insurer no express authority to raise the rate of premium, any attempt to do so is a violation of the terms of the contract.

4. ————: ————: **Tender of Premium.** Where an attempt is made to raise the premium to be paid on an old line life insurance policy and the insurer refuses to accept the fixed premium, a tender of amount due under the contract is sufficient to preserve the rights of the insured, so long as the insurer persists in its wrongful course.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Conkling, Rea & Sparrow* and *James R. Page* for appellant.

*Busby Bros. & Withers* for respondents.

JOHNSON, J.—This suit is on a policy of life insurance and was tried without the aid of a jury. The court filed findings of facts and declarations of law and rendered judgment for plaintiffs in the sum of $4,496.10. After the overruling of the motions for a new trial and in arrest of judgment defendant made formal application for an appeal to the Supreme Court but was allowed an appeal to this court. We certified the cause to the Supreme Court on the ground that a proper solution of the issues involved the determination of certain constitutional questions, but the Supreme Court took a different view of the case and retransferred it.

One of the important issues is whether on not the policy in controversy should be treated as an old line or an assessment policy. It is the contention of defendant that it belongs to the latter class and of plaintiffs that it is an old line policy and, therefore, subject to the provisions of sections 5856 and 5858, Rev. Stat. 1889, relating to extended insurance. We shall state the facts in evidence that have a material bearing on this issue.

The policy was issued in this state June 28, 1894, to Alfred S. Porter, a resident of Carroll county, who died in that county January 9, 1908. The face of the policy, omitting merely formal parts, is as follows:

"In consideration of the application for this policy, which is made a part of this contract, and the payment in advance of fifty-five dollars and eighty cents, and of the further advance payment of fifty-five dollars and eighty cents, to be made on or before the twenty-eighth day of September, December, March and June in every year during the continuance of this contract, The Security Mutual Life Association, does hereby receive Alfred S. Porter, of Carrollton, county of Carroll, State of Mo., as a member of said association, and issues this policy subject to the conditions and with the benefits hereon indorsed, which are made a part of this contract, and within thirty days from the receipt of satisfactory evidence to the association of the death of the above named member, during the continuance of this policy in full force and effect, promises to pay to Mary J. Porter his wife and surviving children, one-fifth, share and share alike; remainder to his estate if living at the time of his death; otherwise, to the legal representatives of the deceased, the sum of five thousand dollars upon presentation and surrender of this policy, properly receipted, less the balance (if any) of the advance payments for the current year of the death of the insured, and any indebtedness of the insured or beneficiary to the association.

"Provided, that if the payments required to be made by the insured under this policy shall not be made when due, then this policy shall become null and void, and the association shall not be liable to pay the sum assured, or any part thereof, and in such event all payments theretofore made hereon shall be forfeited to and become the property of the association."

Among the stipulations printed on the back of the policy are the following:

"This contract of insurance is renewable at the option of the insured, before expiration, upon payment of the advance premiums at the time and in the manner herein provided, subject to the provisions, that by action of the board of directors, the amount required for mortuary purposes may be varied to conform to the actual mortality experience of the association. Any surplus in the mortuary fund in excess of one hundred thousand dollars, and beyond the amount deemed necessary to provide for increased age, shall be credited in reduction of premiums. Any deficiency in the mortuary fund may be made good from the reserve fund.

"After ten years from date of this policy, and while it is in full force, the association will annually thereafter determine and credit the insured with an equitable proportion of the surplus in the reserve fund, in excess of the amount required to be held by law, which amount shall not be less than one hundred thousand dollars. The dividends so apportioned shall be available as follows:

"1st.—In reduction of current premiums.

"2nd.—At any time after ten full years' payments have been made, and while this policy is in full force, the insured may, upon giving the association ninety days' written notice of his intention so to do, surrender this policy and receive therefore a non-participating commuted policy, payable at death out of the reserve fund, for such an amount as the dividend then apportioned and standing to his credit will purchase on the basis of the American Table of Mortality, and four per cent interest.

"3rd.—After ten years from the date of this policy, and while it is in full force, the insured, may, upon giving the association ninety days' written notice, surrender this policy, and in full settlement there-

of receive the amount apportioned and then standing to his credit in cash.

  •  •      •  •      •  •

"This contract shall be governed by and construed only according to the laws of the state of New York. The place of this contract is expressly agreed to be the home office of the association, in the city of Binghamton, Broome County, N. Y."

The Security Mutual Life Association was organized as an assessment company under the laws of New York (Ch. 175, Laws 1883), and it and its successor, the present defendant, were licensed to do business in this state as an assessment company. In 1892, the Legislature of New York passed a general insurance law and article VI of that act referred to "Life or Casualty Insurance Corporations upon the Co-operative or Assessment Plan." An assessment company thus is defined in section 201 of that article:

"Any corporation, association or society which issues any certificate, policy or other evidence of interest to, or makes any promise or agreement with its members, whereby, upon the decease of a member any money or other benefit, charity, relief or aid is to be paid, provided or rendered by such corporation, association or society to his legal representatives, or to the beneficiary designated by him, which money, benefit, charity, relief or aid is derived from voluntary donations or from admission fees, dues, or assessments, or any of them, collected or to be collected from the members thereof, or members of a class therein, or interest, or accretions thereon, or accumulations thereof, or rebates from amounts payable to beneficiaries or heirs; and wherein the money or other benefit, charity, relief or aid, so realized, is applied to or accumulated for the uses and purposes herein specified, or of such corporations, associations or society, and the expenses of the management and prosecution of its business of life insurance upon the cooperative

or assessment plan, (and) shall be subject to the provisions of this article.''

The Security Mutual Life Association was operating under the provisions of that law at the time the policy in suit was issued. In 1898, the association reincorporated in New York under article 10 of the insurance law of that state as a stipulated premium company, and under the name of the Security Mutual Life Insurance Company (the present defendant). In 1899, defendant again incorporated as a level premium or old line insurance company without change in name and under the provisions of the article of the New York law relating to such companies.

Porter paid the quarterly premiums of $55.80 to the agent of defendant and its predecessor in Carroll county to June 28, 1905, and these premiums were accepted and retained by the company. Several days before June 28, 1905, Porter tendered $55.80 to the agent in payment of the quarterly premium due on that date but defendant refused the tender on the ground that its board of directors, pursuant to authority of law and of the terms of defendant's contract with Porter and other holders of like policies, had raised the premium rate from $55.80 to $85.05 per quarter, had given the policy holders due notice of their action and that Porter, being bound by that action, must abide by it or suffer the penalty of a forfeiture of his policy. Porter refused to accept the action of defendant as binding upon him, and it is the contention of defendant that his failure to pay the subsequent quarterly premiums of $85.05 each, worked a forfeiture of his policy.

The articles of incorporation of the Security Mutual Life Association filed in 1886, contain the following provision:

"Sixth. Policy holders in the said association shall be liable only for the voluntary payment of such

fees, dues and assessments as shall be stated in their respective policies.'' The application of Porter contained the agreement ''that should the applicant fail to pay any of the advance premiums on or before the day on which the same shall fall due or fail to comply with any of the terms of this agreement, or with any of the requirements, or by-laws of the said association, that then, in either event, this agreement shall become null and void and all monies which shall have been paid shall be forfeited to the said association for its sole use and benefit.''

Certain parts of the by-laws in force at the time the policy was issued were introduced in evidence. They provide that ''said contract shall also be deemed to include as an integral part the laws of the state of New York, pursuant to which this association was incorporated'' and that ''if any person secures membership by concealing or suppressing any material fact, or if the statements in his application for membership, or subsequent statements made to the medical director or officers of the association in relation to the same, are, in any respect, untrue, or if any member neglects to pay dues and assessments, after due notice that the same has become due and payable, or if any of the conditions upon which the policy is issued are violated, then, and in every such case, such membership shall at once cease and determine and all payments made thereon shall be forfeited to the association.''

The actuary of the Insurance Department of this state, introduced as a witness by plaintiffs, testified that on the hypothesis that the policy is an old line and not an assessment contract and, therefore, falls within the scope of section 5856, Rev. Stat. 1889, it had a value of $1632.55, three-fourths of which would have paid in full the premium on a term policy for four years. In other words the premiums paid by Porter for eleven years sufficed under the statute to keep the

policy in force until June 28, 1909, eighteen months later than the date of Porter's death.

The name given by defendant to policies of the class in suit was "Whole Life Policy" and this name was printed in bold type on the back of the policies. In 1897, the company wrote a letter to its agent at Carrollton denying the charge of competitors that policy holders "were personally liable under their contract of insurance and by reason of the cooperative law under which we are chartered." We quote from the letter as follows:

"No such personal liability can possibly attach to a policy holder in this association, as our policy, by laws, application and charter not only do not provide for it but expressly provide against such liability. Article 6 of our charter reads as follows: 'Policyholders in the said association shall be liable only for the voluntary payment of such fees, dues and assessments as shall be stated in their respective policies.' That there may be no further question upon this subject, and that our agents may be able to meet and combat this false statement, we have added to all policy contracts which will hereafter be issued by the association the following paragraph: 'That no personal liability attaches to the insured; the payment of premiums hereunder being voluntary.'"

Under the head of "Miscellaneous Questions" the folowing questions and answers appear in the general statements filed by defendant with the Insurance Department of this State:

"Give amount of annual dues and how paid. Are these specified in policies or in by-laws? (state which). No dues—expense element variable and specified in policies."

"Do the certificate or policies outstanding specify a fixed amount to be paid, regardless of amount realized from assessments to meet the same? Yes."

"Does the association reserve in its by-laws or policies (state which) the right to levy extra assessments, and how and when? Yes, in both; when necessary in discretion of Board. Upon what basis and manner are your regular assessments or premiums computed? Periodical premiums in advance, with 'Safety Clause.'"

"How are the emergency, reserve or special funds created, and for what purpose, and where deposited? From the net premiums, for the purpose of paying death claims in excess of the provision made in the mortuary fund."

"What is the aggregate amount of an assessment or periodical call upon all the policy holders or members of the corporation or association? No assessments or periodical calls; premiums payable annually, semi-annually or quarterly, in advance."

There are other facts in the record but those stated suffice for an understanding of the questions we think control the disposition of the case.

In the discussion of their contention that the policy in question is an assessment plan contract, counsel for defendant concede that the interpretation of the contract should be governed by the definitive rules to be found in the statutes and decisions of this state. This concession relieves us of the duty of deciding whether the policy should be treated as a New York or a Missouri contract and, assuming it to be a contract made and executed in this state, we shall apply the canons of construction recognized by our laws in dealing with such contracts and shall devote attention only to the laws of New York which by the express terms of the contract were made an integral part of the agreement between the parties. On its face the policy incorporated the application and made it a part of the contract. The application referred to the by-laws and they provided that each contract of insurance should "be deemed to include as an in-

tegral part the laws of the state of New York, pursuant to which this association was incorporated.''

Though we should concede that in this somewhat devious manner the article of the New York insurance laws relating to assessment insurance was made a part of Porter's contract with defendant, such admission would be unimportant in the solution of the question of the classification of the contract in issue, since we find no material difference between section 201, article 6 of the New York statutes and section 5860, Rev. Stat. 1889. The definition of an assessment contract in the latter section substantially agrees with the definition in the New York statute and, for convenience, we shall treat our own law as though the policy expressly had made it an integral part of the contract.

Section 5860 provides: ''Every contract whereby a benefit is to accrue to a person or persons, named therein, upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan,'' etc. This statute has been before the Supreme Court and Courts of Appeals of this state in many cases, to some of which we shall make special reference.

In Hanford v. Mass. Ben. Association, 122 Mo. 50, the defendant had been incorporated in Massachusetts as an assessment company and licensed to do business in this State on that plan. It issued a policy that fixed the amount of the liability of the insurer and also provided for the payment of a stated annual premium which the policy called an assessment. On its face the policy required the payment of this premium with the proviso ''unless the board of directors shall by special notice require a different amount, and in such case the assessment (or premium)

may be based upon the current age of the member."
The Supreme Court, speaking through BLACK, P. J.
hold that since section 5862, Rev. Stat. 1889, required
each assessment policy "to specify the exact sum of
money which it promises to pay upon the contingency
insured against, compliance with that requirement
would not impair the standing of such policy as a con-
tract on the assessment plan," and further referring
to the stipulations relating to the premiums or assess-
ment the opinion says:

"It is further suggested that these policies are
regular old line premium policies and therefore not
within the plan marked out by the statute. It is true
the fifteen dollars to be paid and used as an expense
fund is a fixed and defined sum to be paid annually and
is in no sense an assessment. According to the first
clause of the seventh condition of the policy the mem-
ber must make a monthly payment at fixed and defined
dates during his life and the amount to be paid bi-
monthly is also fixed by the table of rates. Thus far
these policies are premium policies, for it does not
make these fixed rates, payable at specified dates, as-
sessments, to call them by that name. But it is also pro-
vided in and by the policies that the board of direc-
tors may call for and require the payment of a dif-
ferent amount by giving special notice, and the amount
called for may be based upon the current age of the
member and the mortality experience of the associa-
tion. The statute is broad enough to allow assessments
to be based on the age of the member, and the frequency
of the calls on the mortality experience of the par-
ticular association. Our statute calls for an emergency
fund and so do these policies. We think these con-
tracts come within the statute and are contracts of in-
surance on the assessment plan as that plan is de-
fined by the statute. The articles of association and
by-laws of the defendant are not before us, and from

the facts disclosed by this record, we can only say these policies are assessment plan contracts.''

In Elliott v. Ins. Co., 163 Mo. 132, the defendant was incorporated in Iowa and licensed to do business in this state on the assessment plan. The policy in question stated the amount of the benefit and fixed the premium but contained the provision called ''a safety clause'' that: ''In case the death rate ever exceeds our estimated rates, the association will pay the deficiency from the emergency or reserve fund until such fund is exhausted, after which an additional premium may be levied *pro rata,* by the executive board, to meet such deficiency.'' Held, that the policy was on the assessment plan. ''While the amount of the benefit'' says GANTT J., ''is absolutely fixed and the assessments are definite sums estimated to be sufficient to realize the amount promised, yet it is obvious that in this safety clause is a provision by which an extra assessment or assessments may be made and power is vested in the executive board to make the levy and the liability of all members to respond pro rata is fixed: It seems to us this policy meets every requirement of the statute as to insurance on the assessment plan.'' On the ground that the safety clause made the payment of the benefit in some manner or degree dependent upon the collection of assessments upon persons holding similar contracts, Judge GANTT distinguished the case from those decided by the Supreme Court in Jacobs v. Life Association, 146 Mo. l. c. 539; Tooney v. Supreme Lodge, 147 Mo. 129; McDonald v. Bankers Life Ass'n, 154 Mo. 626; Aloe v. Fidelity Mutual Life Association, 164 Mo. 675.

In Jacobs v. Life Association, 142 Mo. 49, the defendant was incorporated in Nebraska and licensed to do business on the assessment plan. The Supreme Court say:

''Whether or not defendant is an insurance company on the assessment plan, and therefore not gov-

erned by the provisions of the statute declaring the
effect of misrepresentations in securing the policy,
is a fact put in issue by the pleadings and the burden
of proof is upon defendant. The fact that plaintiff
calls defendant 'a benevolent corporation' is not, we
think, an admission that it does business on the as-
sessment plan, or that this contract is under that plan.
The statute declares what shall constitute a certificate
or policy of insurance on the assessment plan in the
following words: 'Every contract whereby a benefit
is to accrue to a person or persons named therein, upon
the death or physical disability of a person named
therein, the payment of which said benefit is in any
manner or degree dependent upon the collection of an
assessment upon persons holding similar contracts,
shall be deemed a contract of insurance upon the as-
sessment plan, and the business involving the issuance
of such contracts shall be carried on in this state only
by duly organized corporations.' [R. S. 1899, Sec.
5860.] A contract of insurance must fall within this
definition before it becomes an insurance on the assess-
ment plan; it does not matter under what name it does
business, or what appellation may be given it by oth-
ers.''

On the second appeal (146 Mo. 523) the court hold
the policy was an old line contract. We quote from
the opinion:

''The primary and controlling principle of the
statute is that the benefit is to be paid out of a fund
raised by assessment upon other persons holding sim-
ilar contracts, by which they are made liable for the
payment of such assessments. No scheme of life in-
surance can come within this principle and become in-
surance upon the assessment plan, unless somewhere
along the line of its operations provision is made for
such an assessment, and liability for its payment
created. The right to have the assessment made must
be given to the insured; the duty to make it must be

imposed upon the corporation, and liability for its payment upon its members.

"Nowhere in the defendant's scheme of insurance as disclosed by the evidence in this case, can provision for such an assessment 'in any manner or degree' be found. The payment of all the benefits provided for in their contracts of insurance is dependent upon funds raised and to be raised by the payment of fixed premiums of special amounts to be paid at stated periods, by the members insured, and for the payment of which only they have bound themselves."

The distinction between old line and assessment policies thus is defined in Haydel v. Mutual Reserve, 98 Fed. 200:

"It is important to understand distinctly what is assessment insurance or insurance on the assessment plan. A general statement of this proposition is that it is assessment insurance where the benefit to be paid is dependent upon the collection of such assessments as may be necessary for paying the amount insured. In other words it is assessment insurance if payments to be made by the insured are not unalterably fixed—by the contract. On the contrary an old line policy is a contract where the amount to be paid by the insured is fixed, the premiums to be paid are unalterable, and the liability incurred by the defendant company is also fixed, definite and unchangeable."

This definition is accurate and comprehensive and is well supported by the decisions of our Supreme Court from which we have quoted. As is said in the Jacobs case the character of the policy is to be determined by the nature of the contract it expresses. If the benefit to be paid by the insurer is fixed, and level premiums are charged with no provision in the contract authorizing a raising or lowering of the premiums to meet the demands of changed conditions, the policy will be classed as an old line contract regardless of the nomenclature of the policy or the character and avowed

purposes of the company that issued it. Defendant argues that as it was incorporated in New York and licensed in this state to do business on the assessment plan alone, it had no authority to issue an old line policy and may interpose the defense of *ultra vires* to the action of plaintiffs. Defendant finds support for this position in a dictum in the case of Smoot v. Bankers Life Association, 138 Mo. App. 438, decided by the St. Louis Court of Appeals, but that expression is so opposed to the unbroken current of authority, especially to the long line of decisions in this State wherein the classification of the policy has turned on the construction of its provisions regardless of whether or not the company that issued it had authority to issue old line contracts, that we do not think we should allow this mere dictum to influence the disposition of this case.

The true rule thus is stated in Bacon on Benefit Societies (3 Ed.), vol. 1, sec. 265: "There are authorities which hold that it is always lawful to set up such a defense (*ultra vires*), but of late years the courts frown upon this action, especially when the contract has been executed. . . . This is especially the case when the society has been receiving the assessments on the policy with knowledge."

In the more recent case of Ordelheide v. Modern Brotherhood, 139 S. W. 269, the St. Louis Court of Appeals did not follow the rule stated in the Smoot case but announced the true rule, saying: "Nor can the fact that the defendant has received the statutory certificate of authority to do business as a fraternal beneficiary association affect the matter."

To allow an insurance company to masquerade as an assessment company and then to repudiate its obligations under old line contracts made by it, after it had collected and retained the premiums and this on the ground that it had no authority to make such

contracts would be a doctrine shocking to the plainest principles of law and morals. Having ascertained the rules of law that must control the construction of the policy we turn to the facts in evidence to see how they characterize the contract. The face of the policy states a definite agreement that not only shall the amount of the benefit be fixed and unalterable but also the amount and times of payment of the premiums. There is not the slightest suggestion of the reservation of any authority in the company to vary any of these terms, nor can such suggestion be found in the application or in the by-laws to which the application refers. The charter of defendant expressly provides that "policy-holders shall be liable only for the voluntary payment of such fees, dues and assessments as shall be stated in their respective policies." By the terms of this provision, as well as by the rules of law, the rights and duties of the parties are to be measured by the terms of the policy and it must be conceded that if that instrument gives defendant no express authority to raise the rate of premium the policy must be considered as a regular life insurance contract.

Defendant does not contend that the face of the policy bears any of the features of an assessment contract but argues that a stipulation on the back of the instrument does contemplate and provide for the levy of additional assessments. If susceptible of such construction the stipulation would be nugatory for the reason that it would be in direct conflict with the plain terms of the contract stated on the face of the instrument, but we rule against the contention of defendant on the ground that the stipulation in question does not convey the meaning ascribed to it by defendant. The clause "subject to the provision that by action of the board of directors, the amount required for mortuary purposes may be varied to conform to the actual mortality experience of the association" says nothing about raising the rate of premiums and, considered in

the light of its context, means nothing more than that the mortality fund might be increased or diminished at the expense or benefit of the reserve fund. If there is any ambiguity in this clause it must be resolved against defendant and the right to raise the premiums cannot be predicated of doubtful terms, but must rest upon authority expressly and unequivocally given. Moreover, the subsequent stipulations on the back of the policy giving the holder the option, after the lapse of ten years, to surrender the policy and receive therefor "a non-participating commuted policy payable at death out of the reserve fund" is an absolute agreement to pay such policies without regard to assessments and, as such, is wholly incompatible with insurance on the assessment plan. We conclude that the policy should be classed as an old line contract subject to the provisions of the statute relating to extended insurance and that the attempt of defendant to raise the premiums was a violation of the terms of. the contract and, therefore, void.

The testimony of the state actuary that the amount paid as premiums by Porter was sufficient to extend the policy beyond the period of his life is not disputed and we might rest our decision of this case on the sole ground that with or without a tender of the lawful premium the policy was extended by the force of the statute and was in force at the death of the assured, but since there are two other cases against the defendant pending in this court and submitted with the present case and since these cases lack the feature of extended insurance but in other respects are like this case, we shall further consider the case as though the premiums paid by Porter were not sufficient to extend the policy beyond the period of his life.

As before stated the action of defendant in attempting to raise the premium rate was void and Porter was justified in refusing to be bound by it. His tender of the amount due under the contract was suf-

ficient to preserve his rights and to preclude a forfeiture of his policy as long as defendant persisted in its wrongful course. This policy was a contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums and was not a mere contract of assurance from quarter to quarter with privilege of renewal. [N. Y. Life Ins. Co. v. Statham, 93 U. S. 24.] Consequently it could not be forfeited except for a breach of its terms by the assured. Porter had the right to stand on his contract and could not be put in the wrong by his refusal to comply with defendant's unlawful demand. Nor was he required to do the vain and useless thing of renewing his tender at each subsequent quarter. Indeed, being notified by defendant that nothing less would be accepted than payments of premiums at the increased rate, he was not required to make any tender at all.

"If an insurance company declares a policy forfeited, or repudiates it, or does any act tantamount to a declaration on its part that a premium, if tendered, will not be received, this excuses a failure on the part of the insured to pay, or tender a premium subsequently falling due. . . . Thus a failure to pay has been considered excused: Where the company demanded a larger premium than it was entitled to receive, and notified insured that nothing but a compliance with the demand would be deemed performance," etc. [Cooley's Briefs on Ins., vol. 3, 2330.]

Among the authorities supporting this text the following may be mentioned: Bacon on Benefit Societies & Life Insurance (3 Ed.), vol. 2, 376; Reed v. Ins. Co., 82 N. E. Rep. 736; Hicks v. Ins. Co., 96 S. W. Rep. 964; Guetzkow v. Ins. Co., 105 Wis. 448; 2 Joyce on Insurance, 1123; Shaw v. Ins. Co., 69 N. Y. 286; Ins. Co. v. Ins. Co., 86 Pa. St. 236; Ins. Co. v. Ins. Co., 181 Pa. 443; Benjamin v. Association, 79 Pac. 517; Heinlein v. Ins. Co., 59 N. W. 615; Strauss v. Ass'n,

36 S. E. 352; Life Ass'n v. Kentner, 58 N. E. 966; Hayner v. Ins. Co., 69 N. Y. 435.

The judgment is affirmed. All concur.