## GRAHAM v. HOMESTEADERS LIFE ASS'N et al.

No. 20524. Opinion Filed Oct. 13, 1931.

Rehearing Denied Dec. 1, 1931.

W. F. Collins, for plaintiff in error.

Allen & Jarman, J. C. Cornett, and Rittenhouse, Lee, Webster & Rittenhouse, for defendants in error.

KORNEGAY, J. This cause originated in the court below, as disclosed by the case-made, by the filing of a suit, on the 2nd day of February, 1928, by Pearl F. Graham against the Homesteaders Life Association to recover $2,000, with interest thereon at 6 per cent. per annum, on a life insurance certificate, insuring the life of Carl L. Graham, the certificate being No. H9203. The petition as found on page 4 of the case-made is as follows:

"Comes now the plaintiff above-named and for cause of action against the defendant, alleges and states:

"1. That the defendant is and was at the times hereinafter mentioned a fraternal benefit or mutual insurance society, corporation or association, existing under and by virtue of the laws of Iowa and as such was and is licensed to do and is doing business in the state of Oklahoma and service of summons upon defendant is authorized to be and upon the Honorable Insurance Commissioner of the State of Oklahoma.

"2. That sometime prior to February, 1925, the exact date and year being to the plaintiff unknown but being specially known to the defendant, said defendant, in consideration of the payment of it by Carl L. Graham of the annual premium, dues and assessments therefor, made, executed, and delivered to said Carl L. Graham its policy or certificate of insurance in writing, whereby said defendant insured the life of the said Carl L. Graham in the sum of $2,000, payable to plaintiff as beneficiary, all as evidenced by defendant's certificate or policy of insurance No. H. 9203. That plaintiff is unable to annex a copy of said policy for the reason defendant has wrongfully caused and permitted said policy or certificate of insurance to be delivered to some person or persons having no right or interest therein, or thereto.

"4. (3) That said Carl L. Graham died at Pawhuska, Oklahoma, on the 27th day of October, 1927, when said policy or certificate of insurance was in full force and effect and when and after all premiums, dues, and assessments had been fully paid,

leaving this plaintiff as his surviving wife and dependent and the beneficiary named therein, and by reason thereof plaintiff is entitled to the amount specified in said policy or certificate of insurance.

"5. (4) That plaintiff has furnished defendant with proof of death of the said Carl L. Graham, the insured, and said Carl L. Graham and this plaintiff, as his wife, widow, and dependent and beneficiary named in said certificate or policy, have each done and performed all the conditions of the said policy or certificate and by reason thereof said sum of $2,000 is now due and payable to plaintiff as such wife and defendant and beneficiary named in said certificate or policy of insurance and that no part thereof has been paid, although due demand has been made therefor.

"Wherefore, plaintiff prays that she have and recover judgment of and from defendant in the sum of $2,000, with interest thereon at six per cent. per annum, together with the costs of this action.

"William F. Collins,
"Attorney for Plaintiff."

The life insurance company answered and set up the policy or certificate in a lengthy answer and interplea, beginning on page 8 of the case-made and extending to page 41. It admitted its being a fraternal beneficiary association and denied the other allegations of the petition, except as specifically admitted in its interplea. At page 9, the allegations with reference to its existence and purposes are as follows:

"That as said association, it has a representative form of government, with a lodge system, and provides for the payment of death benefits upon certificates issued by it, to the following named classes of persons, to wit: Wife, husband, relative by blood to the fourth degree, father-in-law, mother-in-law, son-in-law, daughter-in-law, step-father, step-mother, step-children, children by legal adoption, legal representatives, or to a person or persons dependent upon the member, provided that if, after the issuance of the original certificate, the member shall become dependent upon an incorporated charitable institution, he shall have the privilege, with the consent of the governing board or body of the society, to make such institution his beneficiary."

It sets out the issuance of a certificate for $3,000 as of date of October 1, 1920, and an additional $2,000 certificate as of date of October 20, 1921, the beneficiary being Pearl F. Graham, related to the insured as wife. It denied the presentation of death claims by the plaintiff. It admits that about the 7th of December, 1927, proofs of death of the insured were furnished by the mother, and set up the fact that unless proof of death was made within 90 days, there could be no maintaining of the action. It pleads section 79 of its by-laws as follows:

" 'Sec. 79 (b) In the event that the beneficiary named in any certificate dies before the death of the member holding the same and no other beneficiary has been designated, the amount which would have been paid to the beneficiary named, if living, shall be paid in the manner herein designated, and in the following order: First, to the husband or wife of said named member, if there be one. Second, to the child or children of said member, if there be any, and if more than one, then in equal amounts to each. Third, to the mother of said member, if living, and if not, to the father, and if there be neither father nor mother living, then to the brothers and sisters of said member in equal amounts.

" '* * * (d) Divorce. In the event benefits are made payable to the wife or husband of the member, and they be divorced from each other and no new designation of beneficiary is made, the payment of benefits shall be made as if the divorced beneficiary had predeceased the member and no new designation had been made.'

"Defendant further states that on or about the 2nd day of February, 1925, a decree of divorce was entered in the district court of the county of Osage, state of Oklahoma, in a certain cause entitled 'C. L. Graham, Plaintiff, v. F. Pearl Graham, Defendant,' same being No. D-2163, in which cause the said C. L. Graham was divorced from the defendant, F. Pearl Graham."

It further avers that under the terms of the by-laws and the certificate, the money was claimed by the mother, Carrie R. Graham, and asked for leave to pay the money into court, and to require the parties to litigate over the matter. At page 18, the certificate is set out carrying a stipulation as follows:

"This certifies that Carl L. Graham of Pawhuska, state of Oklahoma is a member of this society, and entitled to the benefits herein and to the privileges and benefits provided in the articles of association and by-laws of the society, and binds the said member, by the acceptance hereof, to abide by and be subject to the provisions of said articles of association and by-laws as they now are or may be lawfully amended.

"In consideration of the pledges and agreements of the said member, and the statements in the application and to the medical examiner, and the further consideration of the contributions required and set forth in the conditions in this certificate, the Homesteaders promises to pay to

Flossie P. Graham related to said member as wife, the sum of $3,000, within 90 days after receipt of due proof of the death of said member while in good standing and not in default in payment of the required contributions.

"It is understood and agreed by the society and said member that the conditions appearing on subsequent pages of this certificate are a part of this contract and are as binding as if herein set out over the seal and signatures attached hereto."

At page 22, there is a provision for a change of beneficiary as follows:

"V. Change of Beneficiary. On written application by the member and payment of the required fee, without notice to or consent of the beneficiary, change of beneficiary will be indorsed on this certificate, or on surrender of same a similar certificate will be executed embracing the change as requested."

Paragraph 7, on page 23, is as follows:

"VII. Entire Contract. This certificate, together with the articles of association of the society and by-laws thereof and the application for membership and medical examination, signed by the applicant and all amendments to each thereof, shall constitute the agreement between the member and the society. Copies of the same certified by the supreme secretary shall be received in evidence of the terms and conditions thereof, and any changes, additions, or amendments to said articles of association, or laws duly made or enacted subsequent to the issuance of the said certificate, shall bind the member and his beneficiary and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made and were in force prior to the time of the application for membership."

There were various other provisions about loan values and proof of death within 90 days. The above quotations are taken from exhibit "A." Practically the same provisions are found in exhibit "B."

The court made the order for the defendant Carrie R. Graham to interplead, and she filed an answer and cross-petition, found on page 51 of the case-made. It relied upon the certificates; pleaded a divorce on the 2nd of February, 1925, in the district court of Osage county, wherein C. L. Graham, the insured, was the plaintiff, and F. Pearl Graham, the named beneficiary, was the defendant, a copy of it from the court records being set out.

Reply was filed to this by the Homesteaders Life Association, which was a general denial of facts, except as specifically admitted, and an answer to the cross-petition and interplea was filed by the plaintiff, but in the third paragraph it says that paragraph "d" of section 79 of the by-laws was void, because it was not a part of the by-laws when the certificate was issued. It denies the divorce and attacks the decree for insufficiency of facts in the petition. It also avers marital relationship with the deceased after the decree. A copy of the divorce petition is set out in this answer, which was filed on the 23rd of March, 1928. Demurrer and motion for judgment on the pleadings were interposed by the defendant Carrie R. Graham and overruled, followed by a reply by Carrie R. Graham, which is a general denial except as to the matters admitted. The petition in the second suit is set out, but the suits were consolidated and tried as one after a good deal of colloquy between the attorneys.

The plaintiff, Pearl F. Graham, began to testify at page 84 of the record, and her examination and cross-examination, with the various exhibits, are extended to page 139. In the main her testimony was a denial of the severing of the marital relationship and the validity and existence of the divorce proceedings. Various depositions were introduced on her behalf. Mrs. Lucille Dixon's testimony was directed to the proposition of no severance of marital relationships. Mrs. Sarah Thomas gave testimony upon the same line, beginning on page 154 and ending on page 170 of the case-made. Mr. A. W. Lindsey gave deposition, beginning on page 170 and ending on page 172, on the same line. The deposition of Mrs. E. S. Green begins on page 174, and ends on page 179. Mrs. Jimmie Bennett was called as a witness, her testimony beginning at page 181 and extending to page 198. The plaintiff resting, demurrer on behalf of the defendant was interposed to the evidence, was overruled, and exceptions were taken. The witnesses heretofore referred to were called to establish the continuance of the marital relations.

On behalf of the defendant, H. M. Gambell was called, who was the lawyer in the divorce proceedings, and testified about how it was brought, and the waiver, and the record in the divorce proceeding was gone into in his testimony. The father of the deceased, W. E. Graham, was called, and also his mother and sister testified concerning the relation of the parties, and a sister-in-law was also called. The clerk of the court, Mrs. Abbot, Brocia Pierpoint, all testified concerning the relation of the

parties before and after the divorce. The defendant then rested.

The plaintiff, Pearl F. Graham, was put back on the stand to deny some of the statements made by the other witnesses. Then the plaintiff rested.

The case was submitted on briefs, and the plaintiff introduced the by-laws of the Homesteaders Life Association, disclosing the amendments adopted by the Sixth Quadrennial Supreme Convention October 9 to 10, 1923. It stipulates that the insured continued to pay the premiums up until his death. The journal entry was filed, showing the finding by the court in favor of the mother, Carrie R. Graham, the court holding that the company was a fraternal beneficiary association and its by-laws in the usual form, providing for the contingency of the divorce, as pleaded and set out above. The court found that the divorce proceeding was valid, and rendered a judgment in favor of the mother. The plaintiff excepted, and filed a motion for new trial, which was overruled and followed by exceptions. The case is brought here for decision.

A very lengthy brief has been filed on behalf of the plaintiff in error, it containing 147 pages. A large part of it, however, is a recital of the evidence in the case. The argument in the brief begins at page 110. The first point raised is that Pearl F. Graham, as beneficiary, became vested with the absolute ownership of the proceeds of these two policies upon their issuance and delivery to the insured, and no act of the insurer could divest her of that ownership and vest it in another. This argument is based on the fact, as claimed, that the certificates were life insurance policies, and not fraternal benefit certificates. Section 6774, C. O. S. 1921, and sections 6775 and 6776 are cited, and also the case decided by this court of Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 P. 917, is cited and quoted from extensively. A reference to that case shows that it went off on the proposition of procedure. It was there claimed that there was misrepresentation in the application for the policy, and the provision of our statute about introducing this application, unless a copy was attached to the policy, was the matter before the court. We do not think the solution of that case, or its result, would have any bearing in this particular case.

Some other cases upon the same line are cited, and the case of Knott v. Security Mutual Life Ins. Co., 161 Mo. App 579, 144 S. W. 178, is cited, and on the subject of the vested right of the beneficiary, Central Bank of Washington v. Hume, 128 U. S. 195, is cited and quoted from, and certain sections about change of beneficiary and extended insurance, paid-up insurance, cash loans, advance to pay contributions, and loan value, and general provisions in the certificates are called to our attention, and our attention is called to the fact that the case of Central Bank of Washington v. Hume, cited above, is cited with approval in Johnson v. Roberts, 124 Okla. 68, 254 P. 88. In the Johnson v. Roberts Case, creditors were asking to get the proceeds of an insurance policy payable to the wife. The lower court held that they could do it; the higher court held they could not. The case of Filley v. Illinois Life Ins. Co., 91 Kan. 220, 137 P. 793, is also cited to the effect that where a person was the named beneficiary, who was the wife at the time the policy was taken out, and subsequently got a divorce, in the absence of other designation, she would succeed to the proceeds.

These cases seem to follow the general law as laid down in 14 R. C. L., sec. 549, on the subject of Insurance, and the Permanent Supplement thereto. Extracts are taken from Filly v. Ill. Life Insurance Co. (Kan.) 144 P. 257, of the statements of Justices Smith and West as to the person entitled to the proceeds in the case of divorce, and a case from this court of Pendleton v. Great Southern Life Ins. Co., 135 Okla. 40, 273 P. 1007, is cited to the effect that divorce will not change the course of payment in an ordinary life insurance policy. The point is made that the method of substitution provided in the policy is exclusive, and Miller v. Miller (Iowa) 205 N. W. 870, 42 A. L. R. 567, is cited to that effect.

A careful analysis of the cases shows that none of them are decisive of the question we have here. When the insured received the certificates or policies, whichever they may be called, as shown by the certificates themselves, he agreed that he was a member of the society, and was entitled to the benefits provided in the articles of association and by-laws of the society, and that he was bound to abide by and be subject to the provisions of the by-laws, as they now are or may be lawfully amended, and in consideration of the said agreement, to be so bound, and agreed to make the contributions; the company promised to pay to Flossie P. Graham, related to said member as wife, the amount of the certificate, "after receipt of due proof of the death of said member while in good standing and not in default in payment of the required contributions."

The right to change the beneficiary was given to the member by written application and payment of the required fee, "without notice to or consent of the beneficiary." It was provided in paragraph 7 as follows:

"VII. Entire Contract. This certificate, together with the articles of association of the society and by-laws thereof and the application for membership and medical examination, signed by the applicant and all amendments to each thereof, shall constitute the agreement between the member and the society. Copies of the same certified by the supreme secretary shall be received in evidence of the terms and conditions thereof, and any changes, additions, or amendments to said articles of association, or laws duly made or enacted subsequent to the issuance of said certificate, shall bind the member and his beneficiary and shall govern and control the agreement in all respects the same as though such changes, additions, or amendments had been made and were in force prior to the time of the application for membership."

There are further provisions for the notice of death that we do not regard as material here.

It appears from the stipulation in this case that an amendment was made to the by-laws, after the certificates were issued, which is pleaded in the original interplea as No. 79 (b), and which is quoted above. Most clearly, under this amendment, by which all parties were bound under the terms of the contract, it is shown that it was clearly the purpose of all parties to merely insure the life of the deceased for the benefit, primarily, of the husband or wife; secondarily, child or children, if any there were; and thirdly, the mother of the member, if alive, and if not alive, the father, and if there was neither father nor mother living, then to the brothers and sisters. Language could not be clearer than this. Section "d" provides that in the event benefits are made payable to wife or husband of the member, and they be divorced from each other, and no new designation of beneficiary is made, the payment of benefits shall be made as if the divorced beneficiary had predeceased the member and no new designation had been made.

The deceased was childless. The divorce was found to be valid. The clear terms of the contract were that under those conditions the mother was entitled to the proceeds.

When one examines the proceedings in the court below, and examines the position taken here as to the character of policy it was, and the character of the association it was, there seems to be a radical departure now in the brief from what was admitted to be facts in the lower court. The very petition itself describes the defendant corporation as a "fraternal benefit or mutual insurance society." The company itself so claimed. Everybody else so claimed until after the court found that the divorce was valid.

The whole burden, apparently, of the trial was to show that the former wife knew nothing about the divorce, and maintained marital relations with the deceased, until the time of his accidental death, and there was some outside testimony indicating that marital relations, or rather the relations that ordinarily accompany marriage, were maintained, but the evidence introduced to the contrary was ample to sustain the finding of the lower court to the effect that she knew all about the divorce and recognized it, and signed the general appearance on which the divorce was based. Had the court below held that there was no divorce, there probably would have been some ground to set its finding aside by reason of the evidence being insufficient, but the preponderating evidence in the case was very much in favor of the divorce having been granted, and the plaintiff's having acted on that theory during the life of the insured.

The will that the deceased made referred to the plaintiff as his "divorced wife," the term that would be ordinarily used to characterize the fact that she had been his wife but was divorced. She was not living with him at the time of his death, and he was paying marked attention to others of the opposite sex, and at the time of his death, which was in an automobile accident, he was with a lady friend of his former wife, who evidently was very interesting to him.

Under the conditions, we think the trial court was right in coming to the conclusion it did, and we find no reason for disturbing its finding. The person receiving the proceeds, apparently from this record, had much greater moral claims on the bounty of the deceased than the plaintiff did. The cause is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.