### NATIONAL BENEVOLENT SOCIETY v. RUSSELL.

No. 23465.  Sept. 10, 1935.

Pruett & Wamsley, for plaintiff in error.

Morris & Wilhite, for defendant in error.

PER CURIAM. Jennie M. Russell, as beneficiary in an insurance certificate, brought this action against the National Benevolent Society, of Kansas City, Mo., to recover $500 because of the death of her daughter, the insured.

The policy was delivered on the 25th day of June, 1930, and on the 15th day of the following August the insured died. The application for the policy provided that if death should occur within three years from the date of the certificate, occasioned directly or indirectly because of chronic or contagious disease, not more than double the amount of the assessments actually paid could be recovered. The policy contained a clause providing that the constitution and by-laws of the society should constitute a part of the agreement between the society and the member. Section 110 of the by-laws provides that if a member of the society should die from chronic or epidemic disease, then only one-tenth of the face value of the certificate should be payable. The defendant company tendered the sum of $50, or one-tenth of the amount of the policy, claiming that the insured died of hydrocephalus, a chronic disease.

A jury was impaneled to try the case, and after the defendant had introduced its testimony the court sustained plaintiff's demurrer to its testimony, took the case from the jury, and rendered judgment for the full amount of the policy.

After the overruling of the motion for new trial, the defendant filed a second motion for new trial on the ground of newly discovered evidence, claiming that after the trial a search of its files had led to the discovery of the first of two applications for the insurance, about which there was a dispute at the trial. It was claimed that in the first application the agent had written the information that the applicant had an enlarged head, a condition which appears from the evidence to be one of the symptoms or effects of hydrocephalus. The newly produced application does not contain this information, but is alleged to have upon it evidences of an erasure The statement was considered material at the trial for the reason that the company was claiming the policy was null and void because of a breach of the warranty of good health contained in the application, and that it had no knowledge that the insured was suffering from hydrocephalus. Although the evidence of the application is material upon the issue thus presented, it is not newly discovered within the meaning of the applicable statute, section 398, O. S. 1931, subd. 7, since this paper was in the possession of the company at all times, and many months had elapsed after filing suit before trial. The insurance society does not show that it could not have discovered this evidence by the exercise of reasonable diligence. This evidence, of course, will be available if a new trial is had.

It does not appear why the trial judge took the case from the jury. It is suggested in the briefs, however, that in the court's opinion the defendant was not a fraternal insurance company. If this were true, the application could not be considered a part of the policy, because copies thereof were not attached to the certificate of insurance. See American National Insurance Co. v. Robinson, 85 Okla. 64, 204 P. 269; Missouri State Life Insurance Co. v. Jensen et al., 139 Okla. 130, 281 P. 561.

The case of Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 P. 917, is relied upon, and it is claimed that the society is not a fraternal society for three reasons: First, that it insured a nonmember (the insured in this case) ; second, it operates at a profit; third, the rights of its members are not uniform and mutual. It should be noted that the pleadings tendered no such issue. The original petition alleged that the defendant was a fraternal insurance society. The amended petition did not withdraw this allegation, but alleged that the defendant was a life insurance society, and contained as an exhibit a copy of the certificate which recited that the insured was a member of the National Benevolent Society, a fraternal insurance society. The amended answer admitted that the society was a fraternal insurance society. The original petition was offered and admitted in evidence. Therefore, if there was an issue raised as to the fact of whether or not the defendant was a fraternal insurance society, this question became one for the jury, unless the evidence so preponderated one way that the court must decide. Letcher v. Maloney, 70 Okla. 65, 172 P. 972.

As to the first contention, that the insured was a nonmember, the case of Graham v.

Homesteaders Life Association et al., 153 Okla. 265, 5 P. (2d) 371, held to the contrary. The court there says:

"Where the insured received the certificates or policies, whichever they may be called, as shown by the certificates themselves, he agreed that he was a member of the society, and was entitled to the benefits provided in the articles of association and by-laws of the society, and that he was bound to abide by and be subject to the provisions of the by-laws, as they now are or may be lawfully amended."

The second contention, that the company operates at a profit, is likewise untenable. The testimony of the president of the society does not show, as claimed by defendant in error, that the society operates at a profit; for, although the word "profit" is used in his testimony, it is clear that he was not using the word "profit" in its ordinary significance. His testimony as to "profit" is to the effect that the society in 35 years had built up a reserve of $79,000, which is a little more than $2,000 per year. Under section 10564, O. S. 1931, relating to fraternal beneficiary associations, it is provided:

"Any such association may create, maintain, disburse and apply reserve or emergency funds in accordance with its constitution and by-laws."

The statute gives express right to such associations to create a reserve fund.

The third contention, that the rights of the members are not uniform and mutual, is based on the theory that the defendant issues four different policies or certificates, or rather a combination of four certificates, covering accident, health, and life benefits. Such a plan does not necessarily prevent a society from claiming to be a fraternal beneficiary association. Section 10564, O. S. 1931, supra, provides:

"Each association * * * shall make provision for the payment of benefits in case of sickness, temporary or permanent physical disability, either as a result of disease, accident or old age."

Furthermore, section 10567, O. S. 1931, provides that an annual report shall be made to the Insurance Commissioner of the state, and shall contain, among other things, information in regard to the number of classes insured, and whether or not the association has a reserve fund. Therefore, such an association may have different classes of insurance without violating any provisions with reference to fraternal insurance organizations. The society has adopted the mortuary table set forth in section 10577, O. S. 1931. It has lodges and a representative form of government. No copies of other policies were introduced from which a departure from mutuality or uniformity may be deduced. The evidence offered is insufficient to overcome the unexplained admission in the original petition that the defendant is a fraternal beneficiary association as defined by the laws of the state of Oklahoma.

The statute prohibiting introduction in evidence of the application for the insurance policies does not apply to fraternal beneficial insurance associations. Pioneer Circle Ins. Co. v. Turnham, 112 Okla. 266, 241 P. 176. In such case the application and the by-laws of the association can by agreement be made a part of the policy. Graham v. Homesteaders Life Ass'n et al., supra; Modern Brotherhood of America v. Beshara, 42 Okla. 684, 142 P. 1014.

Furthermore, the statute refers only to the application for the insurance and does not prevent the introduction in evidence of the terms of the by-laws, where they are, by the express words of the policy, made a part of the insurance contract. The by-laws introduced in evidence, as well as the application, show that it was a part of the contract in this case that the company would not be liable to the full extent of the coverage if the assured died from a chronic disease.

The question here, then, is not one of the warranty, but as to the terms of the insurance policy, or, as commonly referred to, the coverage. If the policy contained a specific provision as to limited liability in reference to certain excepted diseases, it is immaterial whether the agent of the company knew the condition of the insured.

In National Life Ins. Co. of the U. S. of America v. Jackson (Ark.) 256 S. W. 378, the court held, in an action on a life insurance policy which conditioned insurer's liability for diseases occurring or contracted prior to date thereof, or death arising therefrom, that the fact that insurer's agent had knowledge that insured had tuberculosis at the time the policy was written or delivered would not enable the insured to avoid the effect of such condition.

In the case of Red Men's Fraternal Accident Ass'n v. Rippey (Ind.) 103 N. E. 345, 50 L.R.A. (N.S.) 1006, the court said:

"* * * It can scarcely be doubted that

there may be a valid stipulation in a policy of life insurance wholly exempting the insurer from liability in case of death from some specified disease, or cause, and it follows that a certificate or policy of insurance may provide that there shall be no liability on the part of the insurer if the insured die within a year from some cause or disease excepted from the general provisions of the contract to insure against death. * * *" (Citing authorities.)

"* * * In such case the insurance is of a limited nature until after the expiration of the time named, and there is no insurance against death from the excepted disease or cause within the time specified."

Compare North Carolina Mutual Life Ins. Co. v. Christian, 131 Okla. 258, 268 P. 729.

This brings us to the question as to whether there was sufficient evidence in the case to show that the insured died from one of the excepted diseases. The testimony in this case is undisputed that hydrocephalus is a chronic disease. The policy plainly provides for only limited liability for death from a chronic disease. It is immaterial, under the authorities, whether this be a disease incurred before or after the issuance of the policy, or whether the company knew of such disease.

To prove death from hydrocephalus, defendant introduced a copy of the report made by the attending physician to the Bureau of Vital Statistics, through the local registrar. The copy introduced, certified by the local registrar, was furnished to the defendant as a part of the proof of death. The plaintiff denied furnishing it herself, but claimed that Mr. Wisenhunt, the undertaker, furnished the proof for her, and it appears that Mr. Wisenhunt furnished this as a part of the proof.

In answer to a question by her counsel, plaintiff testified that Mr. Wisenhunt attended to submitting the proof of death for her. Mr. Wisenhunt, in response to questions by plaintiff's counsel, testified that he submitted proof of death at the request of the plaintiff, and that this proof consisted of the local registrar's certified copy of the death certificate filed by the attending physician. His testimony shows further that this was the only proof submitted. The defendant's testimony is to the same effect. Plainly, therefore, Mr. Wisenhunt acted in this respect as the agent of the plaintiff. This proof, although certified only by the local registrar, was plainly admissible in evidence.

"Again the defendant offered in evidence a part of the proof of death made by Emma Brickman, in which she stated that the deceased 'swallowed carbolic acid,' and the evidence was excluded. This was plainly error, because, though the proof was not made by any of the plaintiffs, still, it was made on behalf of all the beneficiaries, and the rights of all were dependent upon the fact that these proofs had been made; hence any statements required to be made therein were admissible against all." Fey v. I. O. O. F. Mut. Life Ins. Co. (Wis.) 98 N. W. 206.

If the beneficiary causes a certificate of a physician to be furnished as a part of the proof of death, the statements therein made are competent evidence against the beneficiary as admissions. New York Life Ins. Co. v. Turner (Ala.) 97 So. 687; Lundholm v. Mystic Workers of the World, 164 Ill. App. 472.

Furthermore, under section 4514, O. S. 1931, the local registrar is required to record and keep a record of all death registrations, and under section 321, a certified copy of such record may be received in evidence with the same effect as the original. Since this proof recited that death resulted from hydrocephalus, it constituted evidence to that effect, and the court erred in refusing to submit this issue to the jury. If it had been certified by the State Registrar of Vital Statistics, as provided in section 4516, it would have constituted prima facie evidence of the facts therein stated.

The cases of Oklahoma Aid Ass'n v. Thomas, 125 Okla. 190, 256 P. 719, and Metropolitan Life Ins. Co. v. Plunkett, 129 Okla. 292, 264 P. 827, hold that such certificate is not admissible to show suicide, that is, as to who caused the death, but the rule announced should not be extended to read out of the statute, and therefore the public policy of this state, the provision making these records prima facie evidence in all courts and places. The question as to who caused the death of the insured may not be material to the report to be made, but the question of what caused the death is pertinent and germane to the physician's report as a matter of fact and by statute. The statute does not make this evidence conclusive, but only prima facie.

About the facts stated in the certificate, the physician making the statement should be allowed to testify, for to that extent the privileged communication doctrine does not apply. We approve the statement made in the case of McGinty v. Brotherhood of

Railway Trainmen (Wis.) 164 N. W. 249, as follows:

"A death certificate, recorded under St. 1915, sec. 4160, making such certificate 'presumptive evidence' of the cause of death, which has the same significance as what is designated as prima facie evidence under section 1022-12, being a public record, is no longer to be treated as privilege.

"In an action on a life policy, it was proper to permit a physician to testify that a death certificate referred to a cancer as the cause of death, where it stated that the death was caused by an injury to the head."

To limit the liability, of course, one of the diseases mentioned by name in the policy, or some chronic disease, must have been the proximate cause of the death of the insured. Under the statute the attending physician is required to give first the name of the disease which is the "primary cause" of the death. (Section 4502, O. S. 1931.) Hence, it is assumed that the name of the disease first appearing on the certificate is the primary cause. Under the rule of the Wisconsin case, however, the certificate may be explained by the physician. The court below refused to allow the physician to testify as to any matters set forth in the certificate, and counsel argue here that because the physician's evidence would not be admissible, the certificate or proof of death would not be competent. Since the certificate is admissible, the testimony of the physician is admissible to the extent necessary to explain or qualify any recitals in the death certificate.

It is error to direct a verdict against a party or to take a case from the jury and render judgment against him, where, admitting the truth of all the evidence given in his favor, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence reasonably to sustain a verdict should a jury find for him. Oklahoma Aid Ass'n v. Pecinosky, 167 Okla. 427, 32 P. (2d) 167.

For these reasons the cause is reversed, with directions to the lower court to grant the defendant a new trial.

The Supreme Court acknowledges the aid of Attorneys Joseph C. Stone and W. K. Zachry in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Stone and approved by Mr. Zachry, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.